UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

MICHAEL SCHILLER, et al.,

                                  Plaintiffs,

         -against-

CITY OF NEW YORK, ET AL.,

                                 Defendants.

------------------------------------------------------------------------ x

RNC CONSOLIDATED CASES

------------------------------------------------------------------------ x

04-CV-7922 (RJS) (JCF)

**DEFENDANTS' REPLY RULE 56.1 STATEMENT OF UNDISPUTED FACTS, WITH CONSOLIDATED RESPONSES TO PLAINTIFFS' RULE 56.1 COUNTERSTATEMENTS, IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT TO DISMISS PLAINTIFFS' FALSE ARREST CLAIMS AT CHURCH AND FULTON STREETS**

       The following are defendants' consolidated responses to plaintiffs' Local Rule 56.1 Counterstatements of Undisputed Facts filed in the *Abdell, Schiller, Macnamara, Pagoda, Meehan,* and *Botbol* cases (*Abdell* Docket Entry ("DE") 281, *Schiller* DE 599, *Macnamara* DE 470, *Pagoda* DE 114, *Meehan* DE 114, and *Botbol* DE 200).[1] The 157 facts set forth in defendants' moving Local Rule 56.1 Statement are set below forth in bold, with plaintiff's responses and defendants' challenges to plaintiffs' responses following each fact. After the 157 paragraphs of defendants' moving Rule 56.1 statement are defendants' responses to additional

---

[1] Defendants submit this Reply Local Rule 56.1 Statement of Undisputed Facts in these cases: *Schiller v. City of New York*, 04 CV 7922; *Abdell v. City of New York*, 05 CV 8453; *Macnamara v. City of New York*, 04 CV 7921; *Pagoda v. City of New York*, 05 CV 7546; *Meehan v. City of New York*, 05 CV 5268; and *Botbol v. City of New York*, 05 CV 1572.

facts asserted by the *Abdell* and *Schiller* plaintiffs in their respective Local Rule 56.1 Counterstatements of Undisputed Facts (*Abdell* DE 281, *Schiller* DE 599).

## I.   CONSOLIDATED RESPONSES TO PLAINTIFFS' LOCAL RULE 56.1 COUNTERSTATEMENTS

**NYPD Was Responsible For Securing The City's Safety During The 2004 Republican National Convention, And Accommodated The First Amendment Rights Of Protesters**

      **1. Throughout the 2004 Republican National Convention ("RNC"), the NYPD was responsible for the safety and security of the City, its inhabitants, protesters and visitors, and its buildings and property.** This fact is undisputed by all plaintiffs.

      **2. Before the RNC, the NYPD anticipated that the City would see a volume of protest activity not seen in decades, with potentially hundreds of thousands of protesters coming to the City to demonstrate.** This fact is undisputed by all plaintiffs.

      **3. At the same time, the NYPD had a mandate to facilitate the rights of others to peacefully assemble and protest during the Convention.** This fact is undisputed by all plaintiffs.

      **4. Accordingly, the NYPD granted a number of permits for RNC-related demonstrations, and set up a demonstration area within sight and sound of Madison Square Garden ("MSG"), the site of the Convention.** Plaintiffs in *Abdell*, *Meehan*, *Pagoda*, and *Botbol* do not dispute this fact. Further, plaintiffs' contentions in *Macnamara* and *Schiller* seek to dispute that the demonstration area was "within sight and sound" of Madison Square Garden, which is not material to a genuine issue for trial, and is a question of law.

**NYPD Was Advised Of The Possibility Of Violence And Citywide Disorder On August 31, 2004**

5. **Before and during the RNC, protesters called for a "day of civil disobedience" on August 31, 2004, or "A-31."** Plaintiffs in *Abdell*, *Meehan*, *Pagoda*, and *Botbol* do not dispute this fact. Further, plaintiffs' contentions in *Macnamara* and *Schiller* seek to dispute this fact by citing to testimony that has nothing to do with the facts asserted, and also seek to introduce other facts and issues that are unresponsive to the foregoing facts.

6. **Before being deployed at Church and Fulton Streets in lower Manhattan on August 31, 2004, NYPD officers were advised that there were would be large-scale disruptions, violence, and property damage throughout the City by different groups during the course of demonstrations throughout the day.** This fact is undisputed by plaintiffs in *Abdell*, *Pagoda*, *Meehan*, and *Botbol*. Plaintiffs in *Schiller* and *Macnamara* seek to dispute this fact, but they cite to no evidence to contradict defendants' fact. Further, *Schiller* and *Macnamara* plaintiffs' contentions that NYPD officers other than Monahan, Galatai, and Shea were not advised of "large scale disruptions, violence, and property damage" is not material to a genuine issue for trial.

7. **Officers were on a more "heightened state of alert" on August 31 than on other days during the Convention.** Plaintiffs in *Abdell*, *Meehan*, *Pagoda*, and *Botbol* do not dispute this fact. Further, plaintiffs in *Macnamara* and *Schiller* seek to dispute that "officers" other than Chief Monahan was on a "more heightened state of alert," but that dispute is not material to a genuine issue for trial.

8. **As anticipated, NYPD encountered City-wide disorder on August 31, 2004.** Plaintiffs in *Abdell*, *Meehan*, *Pagoda*, and *Botbol* do not dispute this fact. Further, plaintiffs in *Macnamara* and *Schiller* dispute "disorder," but that dispute is not material to a

genuine issue for trial because they do not dispute that there were "protests," "arrests," and "acts of property damage" in the City of New York on August 31, 2004.

## The Church/Fulton Street March Was Part Of the A-31 Planned Day Of Civil Disobedience

9. **The New York City chapter of the War Resisters League ("WRL") planned a march for August 31, 2004 from the World Trade Center Site to MSG.** This fact is undisputed by all plaintiffs.

10. **The WRL was part of an "A-31 Coalition" that called for a day of civil disobedience on August 31, 2004, and WRL members and plaintiffs Ed Hedemann and Ruth Benn planned for the WRL march to coincide with other A-31 Coalition events at which civil disobedience was to take place.** This fact is undisputed by all plaintiffs.

11. **The WRL expected at least a hundred people, and possibly more than that, to turn out for the march.** This fact is undisputed by all plaintiffs.

12. **The WRL planned for the march not to become too "distended" or "disconnected" or "scattered."** This fact is undisputed by all plaintiffs.

13. **The WRL planned for the marchers to proceed as a single, coordinated visible presence.** This fact is undisputed by all plaintiffs.

14. **The WRL publicly called for the marchers to engage in civil disobedience during the march in the form of staging a "die-in" either at MSG or, if marchers were stopped from reaching the floor of MSG before that point, staging a "die-in" wherever the march was stopped.** Plaintiffs in *Abdell, Meehan, Pagoda, Botbol, Schiller,* and *Macnamara* do not dispute this fact. The remainder of contentions by plaintiffs in *Schiller* and *Macnamara* are not material to a genuine issue for trial and are otherwise unresponsive.

- 4 -

15. **The WRL's plans for the march were heavily publicized beforehand.** This fact is undisputed by all plaintiffs.

16. **Plaintiffs were aware of the WRL's plans, including the call for a die-in either on the floor of MSG or wherever police stopped the march before that point.** Plaintiffs in *Meehan*, *Pagoda*, *Macnamara*, and *Botbol* do not dispute this fact. Plaintiffs in *Abdell* and *Schiller* dispute that they themselves or others were aware of WRL's plans, but that dispute is not material to a genuine issue for trial.

## The March Lacked A Permit

17. **In planning for the march, the WRL chose not to apply for a permit.** This fact is undisputed by all plaintiffs. To the extent that *Schiller* and *Macnamara* plaintiffs seek to dispute that a permit was required for a sidewalk march, such dispute calls for a conclusion of law and is unresponsive to the foregoing fact. Further, to the extent that *Schiller* and *Macnamara* plaintiffs rely on the NYPD Legal Guidelines, those Guidelines are inadmissible hearsay and are not a standard of law.

18. **The press materials that the WRL circulated before the march stated that "[no] permits have been granted nor have they been sought" from the City for A-31 events, including the WRL march.** This fact is undisputed by all plaintiffs. To the extent that *Schiller* and *Macnamara* plaintiffs seek to dispute that a permit was required for a sidewalk march, such dispute calls for a conclusion of law and is unresponsive to the foregoing fact.

19. **Before the march began, NYPD officers were aware that the march lacked a permit.** This fact is undisputed by plaintiffs in *Abdell*, *Meehan*, *Pagoda*, and *Botbol*. Plaintiffs in *Schiller* and *Macnamara* incorrectly assert that the sources cited by defendants do

not stand for defendants' proposition, thus they do not dispute this fact. To the extent that *Schiller* and *Macnamara* plaintiffs seek to dispute that a permit was required for a sidewalk march, such dispute calls for a conclusion of law and is unresponsive to the foregoing fact.

    20. **Before the march began, plaintiffs were aware that the march lacked a permit.** This fact is undisputed by plaintiffs in *Abdell, Meehan, Pagoda,* and *Botbol*. To the extent that *Schiller* and *Macnamara* plaintiffs seek to dispute that a permit was required for a sidewalk march, such dispute calls for a conclusion of law and unresponsive to the foregoing fact. *Schiller* and *Macnamara* plaintiffs dispute that they themselves were aware that the march lacked a permit, but that dispute is not material to any genuine issue for trial, and further contradicted by their own admissions (See N. Curley Depo. 83:15-84:4, 143:19-24, 167:25-168:5; Harak Depo. 23:3-8; Raimondi Depo. 318:8-11; Raimondi 50(h) 23:25-24:2; Steyert Depo. 404:11-15, 432:14-16, 456:21-457:2, 470:9-16, 473:20-25)[2], as well as several other plaintiffs' admissions, which support defendants' fact. (See Defs. 56.1, ¶ 20).

    21. **Before the march began, NYPD informed the marchers that they had no permit to march.** This fact is undisputed by plaintiffs in *Abdell, Meehan, Pagoda,* and *Botbol*. To the extent that *Schiller* and *Macnamara* plaintiffs seek to dispute that a permit was required for a sidewalk march, such dispute calls for a conclusion of law and unresponsive to the foregoing fact. To the extent that *Schiller* and *Macnamara* plaintiffs seek to dispute that a permit was required for a sidewalk march, such dispute calls for a conclusion of law and unresponsive to the foregoing fact. *Schiller* and *Macnamara* plaintiffs dispute that they themselves were aware that the march lacked a permit, but that dispute is not material to any genuine issue for trial, and

---

[2] All deposition testimony cited herein is annexed to either defendants' moving declaration in support of their motion for summary judgment, defendants' declaration in opposition to plaintiffs' motions for summary judgment, or defendants' accompanying reply declaration in further support of their motion for summary judgment.

further contradicted by their own admissions (See N. Curley Depo. 83:15-84:4, 143:19-24, 167:25-168:5; Harak Depo. 23:3-8; Raimondi Depo. 318:8-11; Raimondi 50(h) 23:25-24:2; Steyert Depo. 404:11-15, 432:14-16, 456:21-457:2, 470:9-16, 473:20-25), as well as several other plaintiffs' admissions, which support defendants' fact. (See Defs. 56.1, ¶ 20). Moreover, *Schiller* and *Macnamara* plaintiffs' assertion that police officials gave permission for the march to proceed and directed marchers across Church Street is unresponsive to the foregoing fact.


## NYPD Was Generally Aware Of The WRL's March Plans

22. **NYPD was aware of the WRL's march plans.** This fact is undisputed by all plaintiffs.

23. **Before deployment on August 31, 2004, to the World Trade Center Site, NYPD commanders were advised of the possibility of an unpermitted march "of unknown size" at that location.** This fact is undisputed by all plaintiffs.

24. **NYPD was aware that the WRL's planned march would include a die-in at MSG.** This fact is undisputed by all plaintiffs. To the extent that *Schiller* and *Macnamara* plaintiffs dispute that the "die-in" could have occurred "wherever the march was stopped," that dispute is not material to any genuine issue for trial.

25. **Officers were aware of the possibility that there could be violence or disorder during the march.** This fact is undisputed by plaintiffs in *Abdell*, *Pagoda*, *Meehan*, and *Botbol*. To the extent that plaintiffs in *Schiller* and *Macnamara* seek to dispute this fact, they cite to no evidence to support their contention, and their contention that NYPD officers other than Monahan and Galatai were unaware of "the possibility that there could be violence or disorder during the march" is not material to a genuine issue for trial.

26. **NYPD Chief Terence Monahan assigned Inspector Thomas Galati to go down to the area of the World Trade Center and cover the WRL march.**   This fact is undisputed by all plaintiffs.

27. **Inspector Galati went down to the World Trade Center vicinity before the march's publicized starting time of 4:00 P.M.**   This fact is undisputed by all plaintiffs.

28. **Inspector James Shea, who reported to Inspector Galati, arrived on the scene and spoke with Galati before the march began.**   This fact is undisputed by all plaintiffs.

29. **Shortly before the march, earlier that day and at another location in lower Manhattan, Christopher Dunn, NYCLU's Associate Legal Director, had advised Chief Monahan that the WRL march would involve only "around 30 protesters" and would be a "non-event."**   Plaintiffs in *Abdell*, *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller* and *Macnamara* seek to dispute any conversation Dunn had with Monahan before the march, this dispute is not material to create any genuine issue for trial.

30. **However, despite Mr. Dunn's representation to Monahan, and contrary to the WRL's own anticipation of a small number of marchers, a crowd of hundreds congregated at the WTC Site before the march's planned start time of 4:00 p.m.**   Plaintiffs in *Abdell*, *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Moreover, plaintiffs in *Schiller* and *Macnamara* do not dispute that "a crowd of hundreds congregated at the WTC Site before the march's planned start time of 4:00 p.m." To the extent that *Schiller* plaintiffs deny the existence of a conversation between Dunn and Monahan, that dispute is not material to create any genuine issue for trial.

**Before The March Began, NYPD Commanders Discussed The Route Of The March With The WRL's Ed Hedemann, The March Organizer**

31. **Before the march began, the WRL's Ed Hedemann identified himself to NYPD commanders as a march leader or organizer.** This fact is undisputed by all plaintiffs.

32. **Inspector Galati spoke with Hedemann about the march.** This fact is undisputed by all plaintiffs.

33. **The WRL intended to march from the World Trade Center Site west to Broadway, then northbound on Broadway toward Madison Square Garden.** This fact is undisputed by all plaintiffs.

34. **Hedemann advised Galati that "he could have 200 or 2000" protesters participate in the march.** This fact is undisputed by all plaintiffs.

35. **Galati attempted to negotiate an alternate route and safer passage for marchers, northward on Church Street instead of Broadway.** Plaintiffs in *Meehan*, *Botbol*, and *Pagoda* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* seek to dispute the term "safer passage," but cite no evidence from the record to contradict defendants' fact, and incorrectly assert that the sources cited by defendants do not stand for defendants' proposition.

36. **Hedemann rejected the Church Street route, stating that he would not be willing to go in that direction.** This fact is undisputed by all plaintiffs. Plaintiffs in *Abdell* seek to dispute other facts and issues regarding police response to Hedemann's conduct, but that dispute is unresponsive to the foregoing fact.

37. **Galati advised Hedemann that he did not believe that Hedemann could walk his intended route in a safe manner, and that NYPD would not be able to police the march if marchers proceeded against traffic on Broadway.** This fact is undisputed by all

plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute Galati's belief that Hedemann's intended route was not "safe," they cite no evidence from the record to contradict defendants' fact and incorrectly assert that the sources cited by defendants do not stand for defendants' proposition. To the extent that plaintiffs in *Abdell* contend that Hedemann "does not recall" that Galati advised that NYPD would not be able to police the march if marchers proceeded against traffic on Broadway, that dispute does not contradict defendants' evidence from the record.

38. **Galati asked Hedemann if he could alter the march's route in order to provide safety for the police officers that would have to walk with the march, but Hedemann refused to do so.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* dispute that the purpose of Galati's request was to "provide safety for the police officers," they cite no evidence from the record to contradict defendants' fact, and incorrectly assert that the sources cited by defendants do not stand for defendants' proposition.

39. **Once Monahan arrived on the scene, Galati explained to Monahan his prior discussions with Hedemann, after which Galati brought Monahan over to speak directly with Hedemann.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention is unresponsive to the fact asserted and does not contradict defendants' evidence from the record.

40. **Hedemann advised Monahan that he planned to march north on Broadway to Union Square, where he would join with a large group of people that were at Union Square, then continue his march up Broadway to MSG.** This fact is undisputed by all

plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

41. **As Galati had done earlier, Monahan explained to Hedemann that to march northbound on Broadway, counter-flow to traffic, would be extremely dangerous not only to the marchers and people on the street, but also to the police who had to accompany the march.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

42. **As Galati had done earlier, Monahan offered Hedemann the use of any street that was northbound with the flow of traffic.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

43. **Hedemann, however, remained adamant that the march would only go east on Fulton Street and north on Broadway.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

## NYPD Warned The March Organizer That The WRL's Plans To Reach The Floor Of MSG And Shut Down The Convention Would Result In Arrest

44. **Hedemann told NYPD commanders that he planned to march with the group to the floor of MSG, where they stage a die-in and stop the convention.** This fact is

undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute that the "die-in" could have occurred "wherever the march was stopped," that dispute is not material to any genuine issue for trial. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* dispute that Hedemann told NYPD commanders he planned to "stop the convention," that dispute is not material to a genuine issue for trial.

**45. NYPD commanders advised Hedemann that he wasn't going to be able to get to the floor of MSG.** This fact is undisputed by all plaintiffs.

**46. Hedemann advised NYPD that if and when he was stopped en route to the floor of MSG, he planned to stage a die-in.** This fact is undisputed by all plaintiffs.

**47. Galati advised Hedemann that he and others would be placed under arrest if they decided to stage a die-in.** This fact is undisputed by all plaintiffs.

**48. Hedemann told Galati that he fully understood what the NYPD was telling him but nonetheless was sticking with his plans.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* claim mischaracterization of Hedemann's testimony, they cite no evidence to contradict defendants' fact, and do not dispute Galati's testimony regarding his conversation with Hedemann.

## NYPD Provided Additional Warnings To Hedemann And Imposed Explicit Conditions And Rules For the March

**49. Monahan and Galati both warned Hedemann that the march was unpermitted.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute that Monahan (not Galati) had any conversation with Hedemann before the march began, such dispute is not material to any genuine issue for trial. To the extent that *Schiller* and *Macnamara* plaintiffs dispute that a permit was required for march, that dispute

calls for a conclusion of law, and is unresponsive to the foregoing fact. Further, Hedemann's assertion that he "does not recall" speaking to Monahan before the march does not contradict defendants' evidence from the record. To the extent that plaintiffs in Adbell assert that the march was "permitted by police statements and conduct at the scene," that dispute is unresponsive to the foregoing fact.

50. **Both Monahan and Galati advised Hedemann that he would not be able to march with his group in the street because it would be unsafe.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

51. **Galati warned Hedemann that the sidewalk on Fulton Street was very narrow, and that the marchers would have to walk single file or two abreast so they would not take over the sidewalk.** This fact is undisputed by all plaintiffs.

52. **Monahan warned Hedemann that if marchers blocked pedestrians or vehicles, arrests would be made.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

53. **Galati and Monahan both warned Hedemann that marchers could not carry signs or banners large enough to block the sidewalk.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute the size – "large enough" – of the signs or banners, that dispute is not material to a genuine issue for trial. Additionally, to the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that

Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

54. **Galati warned Hedemann that the marchers would not be permitted to walk against the traffic lights.** Plaintiffs in *Meehan*, *Botbol*, *Pagoda*, *Schiller* and *Macnamara* do not dispute this fact. To the extent that plaintiffs in Adbell assert that the march was "permitted by police statements and conduct at the scene," that dispute is unresponsive to the foregoing fact.

## The March Organizer Assured The NYPD That Marchers Would Comply With Police Directives

55. **Before the march began, Hedemann assured both Galati and Monahan that marchers would comply with the NYPD's directives.** Plaintiffs in *Meehan*, *Botbol*, and *Pagoda* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* dispute that Hedemann "assured" police officials that marchers would comply with NYPD directives or that Hedemann had authority to speak on behalf of all marchers, that assertion calls for conclusions of law and plaintiffs cite to no evidence in the record to contradict defendants' fact. Further, *Abdell* plaintiffs' contention that Hedemann's "intention" was "to cooperate with the police in managing the march. WRL was planning to do exactly what Galati expressed he wanted them to do" does not dispute defendants' foregoing fact. Additionally, to the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

56. **Hedemann assured both Galati and Monahan that marchers would walk one or two at a time and that they would not "form up like a march."** This fact is undisputed

by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute that Hedemann "assured" police officials that marchers would comply with NYPD directives or that Hedemann had authority to speak on behalf of all marchers, that assertion calls for conclusions of law and plaintiffs cite to no evidence in the record to contradict defendants' fact. Further, *Abdell* plaintiffs' contention that Hedemann "told Galati that it was intention that the procession would proceed one or two at a time" does not dispute defendants' foregoing fact. Additionally, to the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

57. **Hedemann assured both Galati and Monahan that marchers would not block the sidewalk with a large banner, telling them that marchers would carry the banner parallel to the sidewalk rather than across it.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute that Hedemann "assured" police officials or that Hedemann had authority to speak on behalf of all marchers, that assertion calls for conclusions of law and plaintiffs cite to no evidence in the record to contradict defendants' fact. Additionally, to the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

58. **Hedemann assured Galati that nobody would cross against the lights.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* dispute that Hedemann "assured" police officials that marchers would not "cross against the light," or that Hedemann had authority to speak on behalf of all marchers, that assertion calls for conclusions of law and plaintiffs cite to no evidence in the record to contradict defendants'

fact. Further, *Abdell* plaintiffs' contention that Hedemann "did intend to cooperate with police instructions during the march" does not dispute defendants' foregoing fact. Additionally, to the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

59. **The NYPD believed that Hedemann, as the march organizer, agreed to follow their directives for the march on behalf of all of the marchers.** Plaintiffs in *Meehan*, *Botbol*, and *Pagoda* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* dispute that Hedemann agreed to "follow [police] directives" or that Hedemann had authority to speak on behalf of all marchers, that assertion calls for conclusions of law, and plaintiffs cite to no evidence in the record to contradict defendants' fact. Further, Hedemann's testimony as cited by *Abdell* plaintiffs clearly indicates that it was Hedemann's "intention," on behalf of all marchers, to follow NYPD directives of walking one or two abreast, and not blocking pedestrian traffic. (See Hedemann Depo. 210:20-211:1) (Hedemann made statements to police indicating that he and marchers would comply with police directives). Additionally, to the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record.

60. **Galati asked Hedemann how he could assure the marchers' compliance with NYPD directives.** This fact is undisputed by all plaintiffs. To the extent that *Schiller* and *Macnamara* plaintiffs dispute the term "assure," that dispute is not material to any genuine issue for trial and is unresponsive to the foregoing fact.

61. **Hedemann replied, and the NYPD understood, that the march had designated people who would assure that the marchers would comply with NYPD directives.** Plaintiffs in *Meehan*, *Abdell*, *Botbol*, and *Pagoda* do not dispute this fact.  To the extent that plaintiffs in *Schiller* and *Macnamara* dispute the understanding of police officials other than Monahan, Galati, and Griffin, that dispute is not material to a genuine issue for trial and is otherwise unresponsive. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute that Hedemann "agreed" to comply with NYPD directives, or that Hedemann had authority to speak on behalf of all marchers, that assertion calls for conclusions of law, and plaintiffs cite to no evidence in the record to contradict defendants' fact. Further, Hedemann's testimony as cited by *Abdell* plaintiffs clearly indicates that it was Hedemann's "intention," on behalf of all marchers, to follow NYPD directives of walking one or two abreast, and not blocking pedestrian traffic. (See Hedemann Depo. 210:20-211:1) (Hedemann made statements to police indicating that he and marchers would comply with police directives).

62. **Monahan advised Galati to provide warnings to the marchers to let everyone know that the march was not a permitted event, and that marchers would be arrested if they blocked pedestrian or vehicular traffic.**  This fact is undisputed by all plaintiffs. To the extent that *Schiller* and *Macnamara* plaintiffs dispute that a permit was required for a sidewalk march, such dispute calls for a conclusion of law, and is otherwise unresponsive.

## NYPD Consulted With Legal Counsel Regarding The Terms Of March

63. **Galati called for a representative from NYPD's Legal Bureau to review certain legal issues with Hedemann.**  This fact is undisputed by all plaintiffs.

64. **Assistant Commissioner Robert Messner responded to Galati's call.** This fact is undisputed by all plaintiffs.

65. **Galati then had the same conversation with Hedemann, this time in the presence of Messner, NYPD's legal counsel.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* claim that "defendants do not specify what 'same conversation' means," they cite to no evidence from the record to contradict defendants' fact.

66. **Messner explained to Hedemann that based on New York State's disorderly conduct statute, the marchers could not block vehicular or pedestrian traffic.** This fact is undisputed by all plaintiffs.

67. **Hedemann repeatedly told Messner, as he had assured Galati, that marchers were going to walk two-by-two on the sidewalk and were not going to block the sidewalk.** Plaintiffs in *Meehan*, *Abdell*, *Botbol*, and *Pagoda* do not dispute this fact. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute that Hedemann "assured" anything to Galati, plaintiffs cite to no evidence in the record to contradict defendants' fact. Further, Hedemann's testimony as cited by *Abdell* plaintiffs clearly indicates that it was Hedemann's "intention," on behalf of all marchers, to follow NYPD directives of walking one or two abreast, and not blocking pedestrian traffic. (See Hedemann Depo. 210:20-211) (Hedemann made statements to police indicating that he and marchers would comply with police directives).

68. **In reference to the banner that Hedemann had already discussed with Galati and Monahan, Hedemann told Messner that the marchers would keep the banner parallel to the sidewalk to that it would not block pedestrian traffic.** Plaintiffs in *Meehan*, *Botbol*, and *Pagoda* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*,

and *Abdell* contend that Hedemann "does not recall" speaking to Monahan before the march, that contention does not contradict defendants' evidence from the record..

## NYPD's Commanding Officer Requested Video Recording Of The NYPD's Negotiation With Hedemann And Warnings To The Marchers

69. **Galati next asked an NYPD officer from the Technical Assistance Response Unit ("TARU") to record a conversation with Hedemann.**  This fact is undisputed by all plaintiffs.

70. **Galati then had another conversation with Hedemann, which was audio and video recorded by several TARU officers.**  This fact is undisputed by all plaintiffs.

71. **Galati reiterated what he had said to Hedemann in his prior conversations.**  This fact is undisputed by all plaintiffs.

72. **A transcript of the videotaped conversation is as follows:**

a. **[Galati] "Again, I'm gonna tell you right now, you do not have a permit for this, alright."**

b. **[Galati] "Especially right in the front [referring to banner], right over here [referring to Fulton Street], you will be obstructing people on the sidewalk, that would be an obstruction by itself."**

c. **[Hedemann] "No, but what, uh, we're going to orient it [the banner] towards, single file, orient it towards the traffic, ok, orient it towards the traffic."**

d. **[Galati] "Alright, I just want to make sure that we're clear on this, ok?"**

e. **[Galati] "The sidewalk is very slow over here"**

f. **[Hedemann nodding head in agreement]**

g. **[Galati] "If you have to walk single file, you're going to have to walk single file."**

h.   [Galati] "If anybody in the crew obstructs pedestrian traffic, they will be subject to arrest, I have to emphasize that."

i.   [Hedemann] "Well, give us a warning too, because they may not know that."

j.   [Galati] "I'm giving you a warning right now."

k.   [Hedemann] "No, I know that, but I can't, I mean, uh, we don't have a bullhorn."

l.   [Captain DeEntremont] "We have a bullhorn and we'll use it to warn you."

m.   [Hedemann] "That's fine; that's fine.  Now, what we're going to do is, we're going to march with the banner facing the traffic, so we're not going to block the sidewalk, we'll go sideways."

n.   [Galati] We're going to give some warnings right now with the bullhorn [Hedemann gesturing with hands upward], so that everybody understands what the situation is, ok?"

o.   [Hedemann nodding in agreement]

p.   [Galati] "Again, you gotta obey all the rules of the road."

q.   [Hedemann nodding in agreement]

r.   [Galati] "If the lights [Hedemann nodding in agreement] light up, you can't cross, you can only cross when it's green, ok?"

s.   [Hedemann nodding in agreement]

t.   [Galati] "If anybody steps out, we're going to give them warnings, they will be subject to arrest."

u.   [Hedemann nodding in agreement]

v.   [Galati] "Very good."

w.   [Galati calling for police officer with megaphone; and directing "Jimmy" to go in the back of crowd to repeat warnings that Galati would be giving]

This fact is undisputed by all plaintiffs.

**Before The March Began, The NYPD Provided Warnings, Including Arrest**
**Warnings, To All Marchers Congregated At The World Trade Center Site**

73. **Before the march began, the NYPD warned people gathered by the**
**World Trade Center Site of the risk of arrest if they participated in the march and failed to**
**comply with police orders and directives.** This fact is undisputed by all plaintiffs. To the extent
that plaintiffs in *Schiller* and *Macnamara* assert that they themselves did not hear, or that not
everyone gathered at the World Trade Center heard, any police warnings or that the warnings
mentioned risk of arrest, that assertion calls for speculation and is unresponsive to the fact that
warnings were given. Moreover, *Schiller* plaintiffs Robert Curley and Neal Curley admit that
NYPD issued warnings prior to the march. (See N. Curley Depo. 168:10-16; R. Curley Depo.
36:16-37:8).

74. **The NYPD provided these warnings, orders and directives to the**
**marchers by bullhorn.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in
*Schiller* and *Macnamara* assert that they themselves were not provided, or that not all marchers
or not everyone assembled at the World Trade Center site were provided, with warnings, orders,
and directives, that assertion calls for speculation and is unresponsive to the fact that NYPD
provided warnings, directives, and orders to marchers by bullhorn, and plaintiffs cite to no
evidence from the record to the contrary. Moreover, *Schiller* plaintiffs Robert Curley and Neal
Curley admit that NYPD issued warnings prior to the march. (See N. Curley Depo. 168:10-16;
R. Curley Depo. 36:16-37:8).

75. **Specifically, Inspector Galati made the following specific warnings by**
**bullhorn:**

      a.      **"I am Inspector Galati of the New York City Police Department."**

b.     **"I am informing and warning all the marchers that this is a march without a permit."**

c.     **"You must comply with all of the rules or else you will be subject to arrest."**

d.     **"You have to walk in either a single or double file, so that you do not obstruct pedestrian traffic."**

e.     **"If you obstruct pedestrian or vehicle traffic, I have to inform you, you will be subject to arrest."**

f.     **"You will also have to comply with the lights.  You cannot cross against the lights."**

g.     **"I ask your cooperation, so that everybody has a safe march."**

This fact is undisputed by all plaintiffs.

76. **Having given these warnings to the marchers by bullhorn, Galati instructed Inspector Shea to go to the rear of the group and to continue with the warnings before the march began.**  This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* assert that Galati never specifically gave them or less than all marchers warnings, that assertion calls for speculation and is unresponsive to the fact that NYPD provided warnings to both the front and rear of the group before the march began, and plaintiffs cite to no evidence from the record to the contrary.

77.    **Inspector Shea repeated similar warnings, over a bullhorn, to the back of the crowd.**  This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* assert that Shea's warnings over the bullhorn were not heard at "the back of the crowd," that assertion calls for speculation, and plaintiffs cite to no evidence from the record to contradict defendants' fact.

78.     **Galati also instructed Lieutenant James O'Sullivan to walk up and down the line of marchers assembled for the march and repeat the warnings before the march began.** This fact is undisputed by all plaintiffs.

79.     **Galati later instructed O'Sullivan to stand at the corner where the march was going to step off from and, as the marchers came by, continually repeat the same warnings to marchers.** This fact is undisputed by all plaintiffs.

80.     **O'Sullivan repeated Galati's warnings to marchers over a bullhorn.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* assert that they did not hear, or not all marchers heard, O'Sullivan's repetition of Galati's warnings over a bullhorn, that assertion calls for speculation and  is otherwise unresponsive to the fact that O'Sullivan provided warnings, and plaintiffs cite to no evidence from the record to the contrary. Moreover, *Schiller* plaintiffs Robert Curley, and Neal Curley admit that NYPD issued warnings prior to the march. (See N. Curley Depo. 168:10-16; R. Curley Depo. 36:16-37:8).

81.     **The NYPD had reason to believe that their orders were audible to all marchers before the march began.** This fact is undisputed by all plaintiffs. To the extent that plaintiffs in *Schiller* and *Macnamara* dispute that police officials other than Galati had reason to believe that police warnings were audible to all marchers before march began, that assertion calls for a conclusions of law, calls for speculation, and plaintiffs cite to no evidence from the record to contradict defendants' fact.

## Before The March Began, Plaintiffs Heard The NYPD's Warnings And Directives

82.     **Before the march began, plaintiffs heard the NYPD's warnings, orders, and directives regarding their participation in the march.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that, before the march began, they did not hear any police warnings, orders, and directives regarding their participation in the march, that assertion is specifically contradicted by *Schiller* plaintiffs Robert Curley and Neal Curley, and by *Macnamara* plaintiff Steyert, who all admit that they heard NYPD issue warnings prior to the march. (See N. Curley Depo. 168:10-16; R. Curley Depo. 36:16-37:8; Steyert Depo. 404:11-15, 456:21-457:2, 470:9-16). *Abdell* plaintiffs also mischaracterize several plaintiffs' testimony by improperly asserting that they did not hear any warnings, when they specifically testified that they either heard warnings from others, heard warnings while marching towards Fulton Street, or generally do not recall/remember or do not know. (See Doggett Depo. 107:2-14; T. Gaster Depo. 125:23-126:4, Goldenberg Depo. 100:21-23; Judd Depo. 69:5-7; Kanause Depo. 41:18-42:5; Kantor Depo. 17:4-13, Kavanagh Depo. 107:1-14; Krassan Depo. 79:9-12; Nicinski Depo. 93:5-10; Kocek Depo. 85:7-18; Lanctot Depo. 159:6-160:4; Murray Depo. 62:22-63:3; and Rigby Depo. 24:9-12). Moreover, *Abdell* plaintiff Hernandez specifically testified that she heard pre-march warnings by the NYPD to walk two-by-two (Hernandez Depo. 74:22-75:4). Additionally, *Schiller*, *Macnamara*, and *Abdell* plaintiffs also do not dispute the testimony of 62 additional plaintiffs cited by defendants for the same fact.

83.     **Before the march began, plaintiffs heard the NYPD's specific warning that the march did not have a permit.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* dispute that, before the

march began, they heard specific warning by the police that the march did not have a permit, that assertion is specifically contradicted by *Schiller* plaintiff Neal Curley and by *Macnamara* plaintiff Steyert, who both admit that they heard NYPD announce that the march did not have a permit. (N. Curley Depo. 143:19-24, 167:25-168:5; Steyert Depo. 404:11-15, 456:21-457:2, 470:9-16, 473:20-25). *Schiller*, *Abdell*, and *Macnamara* plaintiffs also do not dispute the testimony of 30 plaintiffs cited by defendants for the same fact.

84.     **Before the march began, plaintiffs heard the NYPD's specific warning that participants in the march would have to walk in either a single or double file, so as not to obstruct pedestrian traffic.**  Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that, before the march began, they did not hear, or that not all plaintiffs heard, any specific police warnings to walk in a single or double file, that assertion is specifically contradicted by *Macnamara* plaintiff Steyert, who admits that he heard NYPD issue warnings, prior to the march, to walk in either single or double file. (See Steyert Depo. 404:11-15, 456:21-457:2, 470:9-16, 474:8-15). *Schiller*, *Macnamara*, and *Abdell* plaintiffs also do not dispute the testimony of 41 additional plaintiffs cited by defendants for the same fact.

85.     **Before the march began, plaintiffs heard the NYPD's specific warning that marchers could not block pedestrian or vehicular traffic during the march.**  Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that, before the march began, they did not hear any specific police warnings to not block pedestrian or vehicular traffic during the march, that assertion is specifically contradicted by *Schiller* plaintiffs Neal Curley and Robert Curley, and *Macnamara* plaintiff Steyert, who all admit that they heard NYPD issue warnings, prior to the march, to not

block pedestrian or vehicular traffic. (See N. Curley Depo. 168:24-169:10; R. Curley Depo. 36:16-37:8, 22; Steyert Depo. 404:11-15, 456:21-457:2, 470:9-16). Plaintiffs also do not dispute the testimony of 23 additional plaintiffs cited by defendants for the same fact.

86.     **Before the march began, plaintiffs heard the NYPD's specific warning that marchers would have to comply with traffic signals and could not cross against the lights.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that, before the march began, they did not hear any specific police warnings to comply with traffic signals and not cross against the light, that assertion is specifically contradicted by *Schiller* plaintiffs Neal Curley and Robert Curley, who both admit that they heard NYPD issue warnings, prior to the march, to comply with traffic signals and not cross against the lights. (See N. Curley Depo. 169:4-7; R. Curley Depo. 36:16-21, 37:7-8, 22). Plaintiffs also do not dispute the testimony of 18 additional plaintiffs cited by defendants for the same fact.

87.     **Before the march began, plaintiffs heard the NYPD's specific warning that participants in the march had to comply with all of the rules or else they would be subject to arrest.**   Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that, before the march began, they did not hear any specific police warnings "to comply with all of the rules or else they would be subject to arrest," that assertion is specifically contradicted by *Schiller* plaintiff Neal Curley. (See N. Curley Depo. 168:6-9). Moreover, *Schiller* and *Macnamara* plaintiffs' claim that the term "all the rules" is vague and ambiguous is not material to any genuine issue for trial, and is unresponsive to the foregoing fact. Plaintiffs also do not dispute the testimony of nine additional plaintiffs cited by defendants for the same fact.

## Before The March Began, Plaintiffs Were Also Told By Others About NYPD's Warnings

88.     **Before the march began, plaintiffs heard of police warnings and directives from others in the march.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that they did not hear, or that not all plaintiffs heard, any "police warnings and directives from others in the march," that assertion is specifically contradicted by *Schiller* plaintiff Fiorentini and *Macnamara* plaintiffs Harak and Raimondi. (See Fiorentini Depo. 60:20-22, 61:18-19, 73:9-15; Harak Depo. 40:5-11; Raimondi Depo. 316:17-22, 347:22-348:5, 354:4-14, 356:7-12, 357:20-358:3, 358:19-21, 359:3-7, 360:3-361:3, 369:7-17). Plaintiffs also do not dispute the testimony of 35 additional plaintiffs cited by defendants for the same fact.

89.     **Before the march began, plaintiffs heard from others of the NYPD's specific warning that the march did not have a permit.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that they did not hear, or that not all marchers heard, any "specific warnings that the march did not have a permit," from others in the march, that assertion is specifically contradicted by other plaintiff testimony. (See Joseph Depo. 79:12-20, 80:6-9; Parry Depo. 129:20-130:3; St. Laurent Depo. 133:9-17). Moreover, to the extent that *Schiller* and *Macnamara* plaintiffs dispute that a permit is required for sidewalk marches, that dispute calls for legal conclusion, and is unresponsive to the foregoing fact.

90.     **Before the march began, plaintiffs heard from others of the NYPD's specific warning that participants in the march would have to walk in either a single or double file, so as not to obstruct pedestrian traffic.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol*

do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that they did not hear, or that not all marchers heard, specific police warnings "to walk in either a single or double file" from others in the march, that assertion is specifically contradicted by *Schiller* plaintiff Fiorentini and *Macnamara* plaintiffs Harak and Raimondi. (See Fiorentini Depo. 60:20-22, 61:18-19, 73:9-15; Harak 40:5-11; Raimondi Depo. 316:17-22, 347:22-348:5, 354:4-14, 356:7-12, 357:20-358:3, 358:19-21, 359:3-7, 360:3-361:3, 369:7-17). Plaintiffs also do not dispute the testimony of 37 additional plaintiffs cited by defendants for the same fact.

91.     **Before the march began, plaintiffs heard from others of the NYPD's specific warning that marchers could not block pedestrian or vehicular traffic during the march.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that they did not hear, or that not all plaintiffs heard, specific police warnings "that marchers could not block pedestrian or vehicular traffic during the march," they do not dispute the testimony of nine other plaintiffs cited by defendants for the same fact.

92.     **Before the march began, plaintiffs heard from others of the NYPD's specific warning that marchers would have to comply with traffic signals and could not cross against the lights.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that they did not hear, or that not all plaintiffs heard, specific police warnings "that marchers would have to comply with traffic signals and could not cross against lights," they do not dispute the testimony of four other plaintiffs cited by defendants for the same fact.

93.     **Before the march began, plaintiffs became aware of police warnings for the march by overhearing discussions between the police and one or more march**

**organizers.**  Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. To the extent that plaintiffs in *Schiller*, *Macnamara*, and *Abdell* assert that they themselves were unaware, or that not all plaintiffs were aware, of police warnings by overhearing discussions between police and march organizers, they do not dispute the testimony of other plaintiffs cited by defendants for the same fact.

## The March Began After The NYPD's Warnings And Directives Were Given

94.     **The march began when plaintiffs and other marchers stepped into Church Street at approximately 4:00 p.m. and crossed Church Street, moving in an eastward direction toward the northern sidewalk of Fulton Street.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that they, or any plaintiffs, "stepped into Church Street at approximately 4:00 p.m., and crossed Church Street" toward Fulton Street, but they cite no evidence from the record to support their dispute.

95.     **Once the march began, Inspector Shea warned marchers as they crossed Church Street that the march did not have a permit, and that marchers had to walk single file or two abreast.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that a permit is required for a sidewalk march, but that dispute call for conclusions of law, does not create a genuine issue for trial, and is otherwise unresponsive. Plaintiffs in *Schiller* and *Macnamara* further dispute that Shea warned that the marchers they had to walk single or double file, but that dispute is specifically contradicted by defendants' Video Compilation, Chapter 5, which depicts Inspector

Shea (at 16:02:06-16:02:09) with a bullhorn telling marchers that they had to walk "one or two abreast so you don't block the sidewalk."

96.   **Once the march began, NYPD officers repeatedly warned the marchers to stay on the sidewalk, and warned them that anyone blocking pedestrian traffic would be arrested.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that NYPD officers warned them or any more than a few other marchers to stay on sidewalk and not block pedestrian traffic or they would be arrested, but that dispute does not create any genuine issue for trial, and is otherwise unresponsive. Plaintiffs in *Schiller* and *Macnamara* do not dispute that "the video footage indicates that officers told marchers during the march to stay on the sidewalk and out of the street in order to avoid arrest."

97.   **Once the march began, plaintiffs heard these warnings from NYPD officers.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller*, *Macnamara*, and *Abdell* dispute the term "warnings." They also dispute that they heard, or that all marchers heard, "warnings," but this dispute is specifically contradicted by *Macnamara* plaintiffs Steyert and Raimondi. (See Steyert Depo. 433:2-10; Raimondi Depo. 438:14 -20). *Schiller*, *Macnamara*, and *Abdell* plaintiffs also do not dispute the testimony of 21 additional plaintiffs cited by defendants for the same fact. In addition, much of the testimony cited by the *Abdell* plaintiffs does not support their contention. In fact, plaintiffs Barrows' and Doggett's testimony supports defendants' contention that warnings were given during the march. (Barrows Depo. 49:13-15; Doggett Depo. 107:5-8). The testimony cited for plaintiffs Burick, DeMott, Gamboa, and Kinane merely indicates that said plaintiffs don't recall or don't remember warnings during the march, which does not contradict defendants' evidence in the record. The

testimony cited for plaintiffs Barfield, Goldenberg, Krassan, Lanctot, and Trinkl is unresponsive to defendants' fact.

98.    **Once the march began, plaintiffs were told of these NYPD warnings from others in the march.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell* and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute the term "warnings." They also dispute that they heard, or that all marchers heard, "warnings," but plaintiffs do not dispute that the testimony of five additional plaintiffs' testimony cited by defendants for the same fact.

## Once The March Began, the NYPD Commanders Observed The Marchers And Deployed Police To Accompany Them

99.    **Galati had called for additional police personnel after learning from Hedemann that he planned to go ahead with the march.**  This fact is undisputed by all plaintiffs.

100.    **NYPD bicycle officers were deployed to ride or walk their bicycles in the street alongside the marchers, in order to protect them from spilling from the north sidewalk of Fulton Street into the roadway.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* seek to dispute that bicycle officers were deployed "in order to protect them from spilling from the north sidewalk of Fulton Street into the roadway," but that dispute calls for speculation, and plaintiffs cite to no evidence from the record to contradict defendants' fact.

101.    **Once the march began, Monahan observed Hedemann near the front of march, with the large white banner that they had earlier discussed stretched across the sidewalk.**  Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Abdell*, *Schiller*, and *Macnamara* claim that video evidence they cite shows that the banner was

never turned widthwise across the Fulton Street sidewalk. But those videoclips show the banner early in the march before it was turned sideways, or, in the case of TARU #62 (Defendants' Video Compilation, Chapter 7), cuts away from the banner only to later show it positioned across the sidewalk.

102. **As the march progressed, Monahan walked up and down the length of the march.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* seek to dispute that this fact by incorrectly asserting that the sources cited by defendants do not stand for that proposition, and further mischaracterize witness testimony.

103. **As the march progressed, Galati walked in the street alongside the marchers.** This fact is undisputed by all plaintiffs.

104. **Monahan and Galati eventually made their way to the front of the march.** This fact is undisputed by all plaintiffs. *Schiller* plaintiffs' dispute with the word "eventually" is not material to any genuine for trial.

105. **Seeing the banner stretched across the sidewalk, Monahan warned Hedemann and other marchers that if they did not remove the banner, and if they continued to block the sidewalk, they would be placed under arrest.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Abdell*, *Schiller*, and *Macnamara* claim that video evidence they cite shows that the banner was never turned widthwise across the Fulton Street sidewalk. But those videoclips show the banner early in the march before it was turned sideways, or, in the case of TARU #62 (Defendants' Video Compilation, Chapter 7), cuts away from the banner only to later show it positioned across the sidewalk.

## The Marchers Appeared To NYPD To Be Parading Without A Permit

106.     **The marchers appeared to NYPD officers to be engaged in parade or procession.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute other NYPD officers' belief other than Galati, but that dispute calls for speculation, and is not material to a genuine issue for trial. Further, plaintiffs' intent in *Schiller* and *Abdell* is not material to any genuine issue for trial.

107.     **Hundreds of individuals participated in the march.** This fact is undisputed by all plaintiffs.

108.     **Marchers carried banners, signs and at least one drum, which was beaten and was audible, during the march.** This fact is undisputed by all plaintiffs. Plaintiffs in *Schiller* and *Macnamara* dispute that they carried, or that all marchers carried, banners, signs or drums, but that dispute is not material to any genuine issue for trial and is unresponsive to the foregoing fact.

109.     **Marchers also wore costumes.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, *Botbol*, *Macnamara*, and *Schiller* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that they themselves wore costumes, but that dispute is not material to any genuine issue for trial, and is unresponsive to the foregoing fact.

## Once The March Began, The Marchers Violated The NYPD's Orders And Directives And Broke The Law

110.     **Marchers breached the conditions by the NYPD right from the start of the march.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Macnamara* dispute that they themselves did not breach any of the NYPD conditions, but that

dispute is not material to any genuine issue for trial, and is unresponsive to the foregoing fact. Plaintiffs in *Abdell* dispute the term "conditions by the NYPD" and that they themselves breached such conditions, but they cite no evidence from the record to contradict defendants' fact. Plaintiffs in *Macnamara* and *Schiller* also dispute the term "conditions by the NYPD" and that they themselves breached such conditions, but that dispute is not material to any genuine issue for trial. Moreover, contrary to the *Schiller* plaintiffs' assertions, plaintiff Robert Curley admitted that he and others were walking more than two abreast (See R. Curley Depo. 41:19-22). To the extent that *Schiller* plaintiffs seek to dispute any dispersal order being given, that dispute is unresponsive to the foregoing fact.

111.   **Contrary to police warnings, marchers blocked vehicular traffic on Church Street while crossing the street.**   Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Abdell*, *Macnamara*, and *Schiller* dispute that they themselves blocked vehicular traffic on Church Street, but that dispute is not material to any genuine issue for trial, is unresponsive to the foregoing fact, and they cite no evidence from the record to contradict the fact that "marchers" blocked vehicular traffic on Church Street while crossing the street. Moreover, plaintiffs in *Schiller*, *Abdell*, and *Macnamara* claim that they or some marchers were directed by the police to cross the street, but plaintiffs have mischaracterized witness testimony. (See Harak Depo. 42:17-23).

112.   **Contrary to police warnings, marchers crossed Church Street against the traffic light.**   Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller*, *Abdell*, and *Macnamara* claim that they or other marchers were directed by the police to cross the street, but plaintiffs have mischaracterized witness testimony. (See Harak Depo. 42:17-23). Plaintiffs in *Macnamara* and *Schiller* dispute that they themselves crossed against the traffic

light, but that dispute is not material to any genuine issue for trial, is unresponsive to the foregoing fact, and plaintiffs cite no evidence from the record to contradict the fact that "marchers" crossed against the traffic light.

113.    **Contrary to police warnings, marchers failed to walk in either a single or double file while crossing Church Street and/or while walking on Fulton Street.** Plaintiffs in *Botbol* do not dispute this fact. Plaintiffs in *Meehan* and *Pagoda* seek to dispute this fact, but cite no evidence from the record by which to do so. Plaintiffs in *Schiller* and *Macnamara* dispute that they themselves failed to walk in single or double file and dispute that they and others had a legal obligation to walk in single or double file, but those disputes do not create any genuine issue for trial, call for conclusions of law, and mischaracterize witness testimony (See R. Curley Depo. 41:19-22; Steyert Depo. 402:12-16; Harak Depo. 41:11-13). Plaintiffs in *Abdell* dispute that they failed to walk single or double file on Fulton Street and that there was no announcement to that effect, but plaintiffs do not dispute the testimony of approximately 42 plaintiffs cited by defendants for the fact that the marchers failed to walk single or double file on Fulton Street.  In addition, plaintiffs in *Abdell* mischaracterize the testimony of the plaintiffs cited in their Local Rule 56.1 Counterstatement (*Abdell* DE 281, ¶113), who (with the exception of plaintiff Janney) indeed testified that they or others failed to walk single file or two abreast.

114.    **Despite the march organizer's assurances to Galati before the march began that that a large banner would be carried parallel to the sidewalk so as not to block pedestrian traffic, marchers rotated the banner across the northern sidewalk of Fulton Street.**  Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Abdell*, *Schiller*, and *Macnamara* claim that video evidence they cite shows that the banner was never turned widthwise across the Fulton Street sidewalk.  But those videoclips show the banner early

in the march before it was turned sideways, or, in the case of TARU #62 (Defendants' Video Compilation, Chapter 7), cuts away from the banner only to later show it positioned across the sidewalk.

115. **Contrary to police warnings, marchers obstructed pedestrian traffic on the northern sidewalk of Fulton Street.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Abdell*, *Schiller*, and *Macnamara* dispute that they caused "obstruction" to any pedestrians, but that dispute calls for conclusions of law, and defendants' fact is supported by testimony from *Abdell* plaintiffs Becker, DeMott, Doggett, Ekberg, Janney, Joseph, Logan, and Petrick that it would have been inconvenient for a pedestrian to have walked against the flow of marchers on the Fulton Street sidewalk. (Defs. Rule 56.1, ¶ 115).

116. **Contrary to police warnings, marchers blocked vehicular traffic on Fulton Street.** Plaintiffs in *Pagoda*, *Meehan*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller*, *Abdell*, and *Macnamara* dispute that they themselves blocked vehicular traffic, but that dispute is not material to any genuine issue for trial.

## NYPD Officers Were Concerned About The Safety Of The Marchers, Themselves, and Others

117. **In the eyes of the NYPD, the marchers were creating a hazardous condition.** Plaintiffs in *Pagoda*, *Meehan*, *Botbol*, and *Abdell* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that no NYPD officers other than Monahan, Galati or Shea could have believed that the marchers were creating a "hazardous" condition, and claim that only Galati used the term "hazardous." These disputes are not material any genuine issue for trial. Plaintiffs in *Schiller* and *Macnamara* also incorrectly assert that the sources cited by defendants do not stand for defendants' proposition.

- 36 -

118.   **The NYPD was concerned about the safety of the marchers.**  This fact is undisputed by all plaintiffs.

119.   **The NYPD was also concerned about the safety of pedestrians and people not participating in the march.**  This fact is undisputed by all plaintiffs.

120.   **The NYPD was concerned about the march's route against the flow of traffic on Broadway, which could threaten the safety of marchers, officers, or others.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that any NYPD officers other than Monahan expressed concern, but that dispute is not material to any genuine issue for trial.

121.   **Observing the crowded condition of the north sidewalk of Fulton Street, Monahan shouted warnings to marchers as they proceeded that they were blocking the sidewalk, that they were in violation, and that they would be subject to arrest if they continued violating the law.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that they heard, or that all marchers heard, any warnings, but that dispute is not material to any genuine issue for trial, and is unresponsive to the fact asserted regarding "marchers." Moreover, video evidence clearly demonstrates that Monahan "shouted" warnings to marchers.  (See Defendants' Video Compilation, Chapter 7).

## The NYPD Stopped The March

122.   **After Monahan pointed out to Hedemann the fact that the banner in the front of the march had been turned widthwise across the sidewalk, as Hedemann had agreed that the marchers would not do, and after yelling warnings to the marchers behind Hedemann that they were blocking the sidewalk, Monahan halted the march on Fulton**

**Street before it reached Broadway.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Macnamara* and *Schiller* dispute that Monahan gave "warnings," and that they or all marchers heard the "warnings," but those disputes are unresponsive to the foregoing fact, and plaintiffs do not dispute that the foregoing fact is further supported by defendants' video evidence that Monahan "yelled" warnings and that the marchers were blocking the sidewalk. (See Defendants' Video Compilation, Chapter 7).

123.    **Monahan halted the march at approximately 4:05 P.M.**  This fact is undisputed by all plaintiffs.


## NYPD Ordered Marchers To Disperse And They Failed To Disperse

124.    **After stopping the march, Monahan warned marchers that "you are now blocking pedestrian traffic, if you do not disperse, you will be placed under arrest."** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Macnamara* and *Schiller* seek to dispute that they themselves heard Monahan's warning, but that dispute is unresponsive to the foregoing fact asserted, and plaintiffs do not dispute that the foregoing fact is further supported by defendants' video evidence that Monahan warned marchers. Moreover, plaintiffs in *Macnamara* seek to dispute with other facts and issues regarding opportunity to disperse, but that dispute is also unresponsive to the foregoing fact.

125.    **Monahan screamed or yelled this dispersal order to marchers.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute the term "dispersal order" and dispute that they heard, or not all marchers heard, Monahan's dispersal order, but these disputes are unresponsive to the foregoing fact, and plaintiffs do not dispute that the foregoing fact is further supported by defendants'

video evidence that Monahan "screamed" or "yelled" dispersal orders to marchers. Moreover, plaintiffs in *Macnamara* seek to dispute with other facts and issues regarding opportunity to disperse, but that dispute is also unresponsive to the foregoing fact.

126. **After stopping the march and giving a dispersal order, Monahan also yelled to the marchers that they were all blocking the sidewalk.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that they themselves heard any "dispersal order," but that dispute is unresponsive to the foregoing fact, and plaintiffs do not dispute that the foregoing fact is further supported by defendants' video evidence that Monahan "yelled" to the marchers that they were all blocking the sidewalk.

127. **NYPD had reason to believe that the marchers heard the dispersal orders.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that they themselves heard, or that all marchers heard, any "dispersal order," but their dispute calls for speculation and a conclusion of law.

128. **NYPD gave marchers opportunity to disperse.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that there was an "opportunity" to disperse, but that dispute calls for a conclusion of law.

129. **Marchers failed to disperse or to respond in a way that suggested an intent to disperse.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute hearing dispersal orders or having "opportunity" to disperse, but that dispute calls for a conclusion of law. <u>See also</u> Defendants' Video Compilation, Chapter 7.

130.   **After Monahan gave the last dispersal order, Monahan and Galati jointly made a "command decision" that the marchers would be arrested.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that anyone other than Monahan made the decision to arrest, but this dispute is not material to any genuine issue for trial.

## NYPD Ordered Arrests Of The Marchers

131.   **Monahan ordered the arrests of the marchers, calling for other officers to assist in cordoning off those to be arrested.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that everyone was a "marcher," but that dispute is not material to any genuine issue for trial and calls for a conclusion of law.

132.   **Monahan identified the group of marchers to be arrested.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that everyone was a "marcher," but that dispute is not material to any genuine issue for trial and calls for a conclusion of law. Plaintiffs in *Schiller* also seek to dispute the adequacy of the identification, but that argument is unresponsive to the foregoing fact, and is a conclusion of law.

133.   **Based on the circumstances, the NYPD believed that the marchers had been given police warnings as a group, and had violated the law as a group acting in concert.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that they themselves violated the law, but that dispute is not material to any genuine issue for trial, and calls for a legal conclusion regarding the

reasonableness of the police officers' beliefs. Further, plaintiffs in *Schiller* dispute the term "group" conduct, but cite no evidence from the record to contradict defendants' fact; otherwise, they do not dispute that Monahan believed that the group was acting "in concert."

134.   **Accordingly, the NYPD believed that each participant in the march was in violation.**   Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* assert the term "violation" is vague and ambiguous, and that they committed no violation, but that dispute is not material to any genuine issue for trial, is unresponsive to the foregoing fact as to what the NYPD believed, and calls for a conclusion of law.

135.   **NYPD decided that individuals who had not joined the march were not in violation and that they would not be arrested.**   This fact is undisputed by all plaintiffs. To the extent that *Schiller* and *Macnamara* plaintiffs seek to dispute other facts and issues regarding their individual conduct and appropriateness of police action, but that dispute is not material to any genuine issue for trial, and calls for a conclusion of law.

136.   **Those prospective marchers who remained on Church Street and did not join the march were not arrested there.**   This fact is undisputed by all plaintiffs.


## NYPD Immediately Contained The Arrestees For Identification And Began Arrest Processing

137.   **NYPD then contained arrestees on the north sidewalk of Fulton Street to ensure that nobody wandered into the group.**   Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute the suggestion that the police "only" wanted to ensure that nobody wandered into the group, but that dispute has nothing to do with the fact asserted and their argument is unresponsive to the foregoing fact.

Furthermore, the video evidence cited by *Schiller* plaintiffs does not support plaintiffs' claim as to the purpose of the NYPD's actions. The remaining contentions by *Macnamara* plaintiffs are not material to any genuine issue for trial and are unresponsive.

138.   **Bicycle officers formed a line on Fulton Street containing arrestees.** This fact is undisputed by all plaintiffs.

139.   **Officers on foot formed a second line parallel to the sidewalk containing the arrestees.** This fact is undisputed by all plaintiffs.

140.   **Monahan ordered officers to seal off the western end of Fulton Street to contain the arrestees.** This fact is undisputed by all plaintiffs.

141.   **On Monahan's orders, bicycle officers sealed off the front of the march so that pedestrians walking westward could not wander into the group and intermingle with the arrestees.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute the suggestion that the "only" reason bicycle officers sealed off the front of the march was to prevent westbound pedestrians from wandering into group, but that dispute has nothing to do with the fact asserted and their argument is unresponsive to the foregoing fact. Furthermore, the video evidence cited by *Schiller* and *Macnamara* plaintiffs does not support plaintiffs' claim as to the purpose of the NYPD's actions.

142.   **NYPD observed no one join the group coming from that direction.** Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that any other police officer other than Galati "observed no one join[ ] the group from that direction" and that Galati had any authority to speak on behalf of NYPD, but those disputes are not material to any genuine issue for trial and are unresponsive.

- 42 -

143.    **Officers then deployed orange fencing containing the arrestees.**  This fact is undisputed by all plaintiffs.

144.    **Once the nets were able to be deployed, officers on foot held the mesh up while the bicycle officers were removed.**  This fact is undisputed by all plaintiffs.

145.    **Officers observed that only those individuals who marched were contained and ultimately arrested.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute that not "everyone" arrested participated in the march, and dispute that that any police officials other than Shea and DeEntremont believed that "only those individuals who marched were contained and ultimately arrested." *Schiller* and *Macanama* plaintiffs' citations to Judge Francis' "no personal knowledge" are uinresponsive and  improperly call for legal conclusions.

146.    **Arrestees were removed from behind the mesh, handcuffed,  assigned to arresting officers, and placed on a bus.**  This fact is undisputed by all plaintiffs.

147.    **Galati instructed his subordinates that arresting officers must have personal knowledge of the conduct of their arrestees or must be informed of that conduct by another officer with personal knowledge.**   Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* seek to dispute this fact, but the testimony cited by plaintiffs does not contradict defendants' fact.

148.    **Galati's subordinates then instructed their officers to the same effect.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* seek to dispute this fact by claiming mischaracterization, but the testimony cited by plaintiffs does not contradict defendants' assertion.

149.   **Galati believed that all of the officers who effected arrests had either personal knowledge of the conduct of their arrestees or had been informed by another officer with personal knowledge.**  This fact is undisputed by all plaintiffs.

150.   **Some people were released and not arrested, including people that could prove that had not been part of the march.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* seek to dispute that "people that could prove that [they] had not been part of the march" were not arrested, but this fact is supported by testimony from six other plaintiffs cited by defendants for the same fact.

151.   **Individuals with proper press credentials were removed from the group and not arrested.**  Plaintiffs in *Pagoda*, *Meehan*, *Abdell*, and *Botbol* do not dispute this fact. Plaintiffs in *Schiller* and *Macnamara* dispute the term "proper press credentials" as vague and ambiguous, and dispute that police officials took steps to "remove" anyone from the group, but these disputes call for conclusions of law and  mischaracterize witness testimony to suggest that the witness was carrying "proper press credentials." It is undisputed that plaintiff Schiller did not have NYPD issued press credentials.  (Schiller Depo. 61:23-62:02).

152.   **Galati also released an "elderly woman who was having problems breathing."**  This fact is undisputed by all plaintiffs.

153.   **Arrestees were charged with parading without a permit.**  This fact is undisputed by all plaintiffs.

154.   **Arrestees were charged with disorderly conduct, NY Penal Law §240.20(5), for blocking vehicular or pedestrian traffic.**  This fact is undisputed by all plaintiffs.

155.   **Arrestees were charged with disorderly conduct, NY Penal Law §240.20(6), for failing to comply with an order to disperse.**   This fact is undisputed by all plaintiffs.

156.   **After the RNC, an Assistant District Attorney called Monahan and "apologized that they weren't going to go forward, [] she said it was more than enough probable cause to make arrests, but decisions were made above her, and she felt for political reasons that the DA's office was not going to proceed."**   This fact is undisputed by all plaintiffs.

157.   **Notably, New York County Assistant District Attorney Gary Galperin, noticed for deposition by plaintiffs in theses RNC cases, testified that as follows: "There could be some situations where a police officer and we in turn could charge someone with a particular offense even if the police officer did not specifically make eye contact or visually observe each defendant. For example, if we know 50 people are blocking an intersection and if we know the 50 people who were apprehended and arrested were all part of the blockage, it wouldn't be necessary necessarily for a police officer to have made eye contact with each of the 50 people as long as we can say with reasonable cause that each of the 50 people were part of the blockage."**   This fact is undisputed by all plaintiffs.

## II.   RESPONSES TO ADDITIONAL FACTS ASSERTED IN PLAINTIFFS' LOCAL RULE 56.1 COUNTERSTATEMENTS

**Reply to Additional Facts Asserted by *Abdell* Plaintiffs**

158.   Defendants dispute the statement contained in paragraph 158.   The testimony and the video evidence cited do not support plaintiffs contention.   Specifically, plaintiff Amato testified that once the march began, he was in the first group to cross Church Street, and thus, would not have been crossing onto the Fulton Street Sidewalk, after the march was stopped.  (Amato Depo. 109:3-4). As for TARU #138, which depicts Inspector Shea giving warnings by bullhorn, it is unclear whether, as plaintiffs claim, such warnings were being given after the march had been stopped.

159.   Defendants dispute the statement contained in paragraph 159.   Plaintiffs cite no specific evidence to support this contention.

160.   Defendants dispute the statement contained in paragraph 160, to the extent that it characterizes the persons on Fulton Street as "members of the media and other pedestrians."  In addition, the Burns and CBS News at 11 videoclips cited show "media" mixed in with marchers on Fulton Street as the march is moving down the sidewalk, not "when the marchers first stepped onto the [Fulton Street] sidewalk."

161.   Defendants do not dispute that persons with NYPD-issued press credentials were released, but dispute that "only media" were released.  The undisputed evidence is that people without NYPD issued press credentials were also released and not arrested.  (See Defs. 56.1, ¶¶ 150, 152).

162.   Defendants dispute the statement contained in paragraph 162. (See Defendants' Local Rule 56.1 Counterstatement filed in *Abdell*  (*Abdell* DE 284), ¶¶ 34-35, 65-66, 96-97).  Moreover, plaintiffs' contentions call for a conclusion of law.

163.   Plaintiffs' contentions call for a conclusion of law.

164.    Defendants dispute the statement contained in paragraph 164.  (See Defs. 56.1, ¶¶ 96-98).  Moreover, paragraph 164 is not a statement of material fact that would create a genuine issue for trial.

165.    Paragraph 165 is not a statement of material fact that would create a genuine issue for trial.

166.    Defendants dispute the statement contained in paragraph 166. (Defendants' Video Compilation, Chapter 7).

167.    Defendants dispute the statement contained in paragraph 167 to the extent of "thirty seconds" passing. The videographer filming TARU #138 videoclip appears to have stopped and restarted the camera at 16:04:57, such that the counter depicted on the videoclip is not necessarily an accurate reflection of elapsed time.

168.    Defendants do not dispute the statement contained in paragraph 168.

**Reply to Additional Facts Asserted By *Schiller* Plaintiffs**

1-69.    *Schiller* plaintiffs, in opposing defendants' motion for summary judgment, reassert the exact same facts they assert in support of their own motion for summary judgment (*Schiller* DE 575). To that extent, defendants incorporate by reference Defendants' Local Rule 56.1 Counterstatement of Undisputed Facts filed in *Schiller* (*Schiller* DE 600).

70.    Defendants dispute the statement contained in paragraph 70. (See Defs. 56.1, ¶¶ 110, 112).  Moreover, plaintiffs' statement is not material to any genuine issue for trial.

71.    Defendants dispute the statement contained in paragraph 71. (See Defs. 56.1, ¶ 113).  Moreover, plaintiff Robert Curley admitted that he was not walking single file or two abreast -- "You know, we weren't in like Catholic school two by two's crossing the street."

(R. Curley Depo. p. 41:20-22). Further, plaintiffs' statement is not material to any genuine issue for trial.

72.     Defendants do not dispute the statement contained in paragraph 72.    In addition, Judge Francis's November 28, 2006 Order held that such lack of "personal knowledge" "does not preclude the defendants from presenting evidence that a plaintiff was within a group of individuals allegedly engaged in unlawful activity or from arguing that such evidence is sufficient to demonstrate probable cause." (See *Abdell* DE 50, p. 4; Defs. 56.1,  ¶¶ 110-113, 115-116, 133-134).

73.     Defendants dispute the statement contained in paragraph 73. (See *Abdell* DE 284, ¶¶ 34-35, 65-66, 71, 81-82, 85, 96-97, 101-102; *Meehan* DE 117, ¶15). Moreover, plaintiffs' contentions call for a conclusion of law.

74.     Defendants dispute the statement contained in paragraph 74. (See *Abdell* DE 284, ¶¶ 34-35, 64-65, 96-98).  Moreover, plaintiffs' contentions call for a conclusion of law.

75.     Defendants dispute the statement contained in paragraph 75.  (See *Abdell* DE 284 ¶¶ 38, 41, 81-82, 85-86, 101-102; *Meehan* DE 117 ¶15).   Moreover, Plaintiffs' contentions call for a conclusion of law.

76.     Defendants dispute the statement contained in paragraph 76, to the extent that it characterizes the persons on Fulton Street as "members of the media and other pedestrians."  In addition, the Burns and CBS News at 11 videoclips cited show "media" mixed in with marchers on Fulton Street as the march is moving down the sidewalk, not "when the marchers first stepped onto the [Fulton Street] sidewalk."

77.     Defendants dispute the statement contained in paragraph 77. (See *Macnamara* DE 475; Defs. 56.1, ¶ 112).

78.     Defendants do not dispute the statement contained in paragraph 78.

79.     Defendants dispute the statement contained in paragraph 79.

80.     Defendants dispute the statement contained in paragraph 80.   (See *Macnamara* DE 475,  ¶¶ 4, 6, 39; *Abdell* DE 284,  ¶12).

81.     Defendants dispute the statement contained in paragraph 81.   (See *Macnamara* DE 475, ¶ 27; *Abdell* DE 284,  ¶¶ 40, 52-53, 92-93, 103, 111, 117, 123-124, 128-129, 132-133, 137-138).  Moreover, plaintiffs' contentions call for a conclusion of law.

82.     Defendants dispute the statement contained in paragraph 82.   (See *Macnamara* DE 475, ¶ 72; *Abdell* DE 284,  ¶¶ 40, 52-53, 92-93, 103, 111, 117, 123-124, 128-129, 132-133, 137-138).  Moreover, plaintiffs' contentions call for a conclusion of law.

83.     Defendants dispute the statement contained in paragraph 83.   (See *Macnamara* DE 475,  ¶¶ 25, 45-46, 67-69; *Abdell* DE 284, ¶¶ 33, 55, 59, 90, 95, 105, 109, 114, 119, 124, 126, 130, 135, 139).

84.     Defendants dispute the statement contained in paragraph 84.  Plaintiffs claim that video evidence they cite shows that the banner was never turned widthwise across the Fulton Street sidewalk.  But those videoclips show the banner early in the march before it was turned sideways, or, in the case of TARU #62 (Defendants' Video Compilation, Chapter 7), cuts away from the banner only to later show it positioned across the sidewalk.

85.     Defendants dispute the statement contained in paragraph 85.  The testimony and videos cited by plaintiffs does not support plaintiffs' contention that people were able to walk "without difficulty" on the Fulton Street sidewalk.  (See *Macnamara* DE 475, ¶ 40; *Abdell* DE 284 ¶¶ 37, 68, 86, 99, 112, 116).

86.     Defendants dispute the statement contained in paragraph 86.   The evidence cited by plaintiffs does not support plaintiffs' contention that "[p]edestrians unaffiliated with the march" were able to walk "without difficulty" on the Fulton Street sidewalk.   (*Meehan* DE 117, ¶17).

87.     Defendants do not dispute the statement contained in paragraph 87.

88.     Defendants dispute the statement contained in paragraph 88.   (See Defs. 56.1, ¶¶ 55-61).   It was Hedemann's "intention," on behalf of all marchers, to follow NYPD directives of walking one or two abreast, and not blocking pedestrian traffic.   (See Hedemann Depo. 210:20-211:1 (Hedemann made statements to police indicating that he and marchers would comply with police directives).

89.     Defendants dispute the statement contained in paragraph 89.   *Schiller* plaintiffs Robert Curley and Neal Curley, and *Macnamara* plaintiff Steyert, all admit that they heard NYPD issue warnings prior to the march.   (See N. Curley Depo. 168:10-16; R. Curley Depo. 36:16-37:8; Steyert Depo. 404:11-15, 456:21-457:2, 470:9-16).   In addition, *Schiller* plaintiffs do not dispute the testimony of 62 additional plaintiffs cited by defendants for the same fact.

90.     Defendants do not dispute that a few people in the crowd claimed that they could not hear, but the undisputed evidence in the videos cited by plaintiffs indicates that Galati's announcements are audible.   In addition, no plaintiffs dispute that Inspector Galati had Inspector Shea and Lt. O'Sullivan walk to the rear of the marchers and alongside the assembled marchers to repeat Inspector Galati's warnings.   (Defs. 56.1, ¶¶ 76-81.)

91.     The statement contained in paragraph 91 is not a statement of material fact that would create a genuine issue for trial.

92.     The statement contained in paragraph 92 is not a statement of material fact that would create a genuine issue for trial.  Moreover, plaintiffs mischaracterize Neal Curley's testimony.  Neal Curley testified that he did not recall an instruction to walk either single or double file.  (N. Curley Depo. 168:10-16).

93.     The statement contained in paragraph 93 is not a statement of material fact that would create a genuine issue for trial.

94.     The statement contained in paragraph 94 is not a statement of material fact that would create a genuine issue for trial.  Moreover, plaintiffs mischaracterize Robert Curley's testimony.  Robert Curley testified that the warning quoted in paragraph 94 are the only warnings he remembered.  (R. Curley Depo. 36:16-37:8).

95.     Defendants dispute the statement contained in paragraph 95. In addition, *Schiller* plaintiffs do not dispute the testimony of 22 plaintiffs cited by defendants for the same fact. Further, much of the testimony cited by plaintiffs does not support their contention.  In fact, plaintiffs Barrows and Doggett's testified that they did hear police warnings during the march.  (Barrows Depo. 49:13-15; Doggett Depo. 107:5-8).  The testimony cited for plaintiffs Burick, DeMott, Gamboa, and Kinane merely indicates that these plaintiffs don't recall or don't remember warnings during the march, not that none were given.  The testimony cited for plaintiffs Barfield, Goldenberg, Krassan, Lanctot, and Trinkl does not support, and is unrelated to, plaintiffs' contention.

96.     Defendants do not dispute the statement contained in paragraph 96.

97.     Defendants submit that the video speaks for itself.

98.     Defendants dispute the statement contained in paragraph 98, to the extent it asserts that Monahan was only speaking to those at the front of the march.  The evidence cited

does not support that assertion.   (See Defs. 56.1, ¶¶ 124-127).   Further, defendants dispute plaintiffs' statement to the extent it infers that once Monahan ordered police officers to form a line, the marchers were not free to leave.

99.   Defendants dispute the statement contained in paragraph 99, to the extent it asserts that Monahan was only speaking to those at the front of the march.   The evidence cited does not support that assertion.   (See Defs. 56.1, ¶¶ 125-127; Defendants' Video Compilation, Chapter 7).   Further, defendants dispute plaintiffs statement to the extent it infers that once Monahan ordered arrest teams, the marchers were not free to leave.

100.   Defendants dispute the statement contained in paragraph 100. Neither of the videoclips cited by plaintiffs (TARU #62, Burns clip) show that when Chief Monahan gave his dispersal order, officers were blocking marchers from moving eastward on Fulton Street.

101.   Defendants dispute the statement contained in paragraph 101. The Burns videoclip is not taken from the front of the march, and does not show how long the marchers at the front of the march were stopped before Chief Monahan gave his dispersal order.

102.   Defendants dispute the statement contained in paragraph 102.   The undisputed evidence is that after stopping the march, Monahan yelled the dispersal order and all other statements made to the marchers.   (See Defendants' Video Compilation, Chapter 7; Defs. 56.1, ¶¶ 125-127)

103.   Defendants dispute the statement contained in paragraph 103.   The evidence cited by plaintiffs does not support the allegation this occurred "during the march."

104.   Defendants do not dispute the statement contained in paragraph 104.

105.   Defendants dispute the statement contained in paragraph 105. (Defendants' Video Compilation, Chapter 7).

106.     Defendants   dispute   the   statement   contained   in   paragraph   106. (Defendants' Video Compilation, Chapter 7).

107.     Defendants dispute the statement contained in paragraph 107, to the extent that the cited videoclips are unclear as to the relationship in time between when Chief Monahan stopped the march and when police are depicted giving warnings to the marchers.  Defendants further dispute that the videoclips show police "guiding" people across Church Street. (See also *Macnamara* DE 475,  ¶¶ 4, 6, 39; *Abdell* DE 284,  ¶12).

108.     Defendants   dispute   the   statement   contained   in   paragraph   108.     (See *Abdell* DE 284,  ¶¶ 47, 50, 54, 58, 63, 70, 72, 77, 79, 84, 89, 94, 104, 108, 113, 118, 121, 125, 134; *Macnamara*  DE 475,  ¶¶ 25, 44, 67; Defs. 56.1, ¶¶ 124-129).

109.     Defendants dispute the statement contained in paragraph 109.  (See *Abdell* DE 284,  ¶¶ 33, 55, 59, 90, 95, 105, 109, 114, 119, 124, 126, 130, 135, 139; *Macnamara* DE 475, ¶¶ 25, 44, 67; Defs. 56.1, ¶¶ 124-129).

110.     Defendants dispute the statement contained in paragraph 107, to the extent that the cited videoclips are unclear as to the relationship in time between when Chief Monahan stopped the march and when police are depicted giving warnings to the marchers.  Defendants further dispute that the videoclips show police "guiding" people across Church Street. (See also *Macnamara* DE 475 ¶¶ 4, 6, 39; *Abdell* DE 284, ¶12).

111.   Defendants dispute the statement contained in paragraph 111; Chief Monahan and Inspector Galati made a joint arrest decision (Defs. 56.1, ¶130).   Moreover, plaintiffs' statement is not material to any genuine issue for trial.

Dated: New York, New York
           November 23, 2011

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the  City of New York
*Attorneys for Defendants*
100 Church Street, Room 3-132
New York, New York 10007
212.788.1817 (ph)
212.788.9776 (fax)

By: _____

Fred M. Weiler, Esq.
Raju Sundaran, Esq.
Odile Farrell, Esq.
Special Federal Litigation Division