Index No.  05 CV 1572 (RJS)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALARIE KAUR BRAR,

Plaintiff,

- against -

The CITY OF NEW YORK, et al.,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Cheryl Shammas*
*Tel:  (212) 356-2406*
*Matter No. 05SF025258*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

STANDARD OF LAW............................................ 3**ERROR! BOOKMARK NOT DEFINED.**

ARGUMENT

      **POINT I**

            DEFENDANTS MUST BE DISMISSED ON
            VARIOUS GROUNDS                   4

      **POINT II**

            PLAINTIFF'S FALSE ARREST CLAIM MUST
            BE DISMISSED BECAUSE HER ARREST WAS
            SUPPORTED BY PROBABLE CAUSE        5

                Probable Cause for Disorderly Conduct and OGA......................... 6

      **POINT III**

            DEFENDANTS ARE ENTITLED TO SUMMARY
            JUDGMENT AS TO PLAINTIFF'S CLAIM OF
            FIRST AMENDMENT VIOLATION          9

      **POINT IV**

            DEFENDANTS ARE ENTITLED TO SUMMARY
            JUDGMENT AS TO PLAINTIFF'S
            CONDITIONS OF CONFINEMENT CLAIM      10

                Plaintiff Did Not Sustain "Substantial Injury"............................. 12

                Plaintiff Had Adequate Amenities and Was Not Exposed to Toxic
                Substances.................................................................................... 12

                Defendants Did Not Act With A Subjectively, Culpable State of
                Mind............................................................................................. 13

**Page**

POINT V

    DEFENDANTS ARE ENTITLED TO SUMMARY
    JUDGMENT AS TO PLAINTIFF'S CLAIM OF
    FAILURE TO INTERVENE                           14

POINT VI

    DEFENDANTS ARE ENTITLED TO SUMMARY
    JUDGMENT AS TO PLAINTIFF'S CLAIM OF
    DENIAL OF A CONSTITUTIONAL RIGHT TO A
    FAIR TRIAL                                 15

POINT VII

    DEFENDANTS ARE ENTITLED TO
    QUALIFIED IMMUNITY                         17

POINT VIII

    DEFENDANTS ARE ENTITLED TO SUMMARY
    JUDGMENT AS TO PLAINTIFF'S MONELL
    CLAIMS                                    19

        No Underlying Constitutional Violation........................................ 19

        No Policy of Making Mass Arrest Without Individualized Probable
        Cause................................................................................... 21

        No Policy of Arresting Individuals For Being Involved in, or Near
        Political Protest ........................................................................ 22

        No Policy Of Using Unnecessary Force In Taking Individuals Into
        Custody ................................................................................... 23

        No Policy Of Deliberately Handcuffing Detainees Too Tightly .. 24

        No Policy of Exposing Plaintiffs to Toxic Substances or Other
        Unlawful Conditions                        24

        No Policy Of Falsifying Documents Videotapes, Evidence, And
        Testimony ................................................................................ 24

**CONCLUSION** ..................................................................... 25

## PRELIMINARY STATEMENT

Plaintiff Valarie Kaur Brar brings this action pursuant to 42 U.S.C. § 1983 arising out of her arrest and detention on August 31, 2004.  From August 30, 2004 to September 2, 2004, the City of New York hosted the Republican National Convention (the "RNC").  (56.1 at ¶ 1).   The NYPD was advised that August 31, 2004 was designated as a day of rage and civil disobedience, and thus, was a day of possible citywide disorder or violence.  (56.1 at ¶¶5-11 ).  On the morning of August 31, 2004, plaintiff Valarie Kaur Brar – who had flown to New York specifically for the RNC – met up with a group of protesters intent on engaging in civil disobedience by taking over the streets in the Wall Street area to protest capitalism during morning rush hours.  (56.1 at ¶¶ 12-33).   Plaintiff agreed to film the protest that was staged at the intersection of South William Street and Mill Lane.  Plaintiff arrived at the arrest location with others who were part of the group, and stood with others who were also there to film the event, including non-party witnesses Jeremy Bigwood and Eartha Melzer.  (56.1 at ¶ ¶16-29).

Before the demonstration began, police were already at the location.  (56.1 at ¶ 24-33). Police watched as individuals ran into the street at the intersection of William Street and Mill Lane to block vehicular traffic, and string balls of yarn across the road, running them across signposts back and forth.  (56.1 at ¶¶ 33-42).  Others on the block began chanting and dancing in the middle of both streets.  (56.1 at ¶¶ 43-45).  As a result, vehicular traffic on both streets became blocked, with at least 12 cars backed up on South William Street, and no cars being able to enter Mill Lane.  (56.1 at ¶¶ 46, 47).  In addition, the yarn caused people to trip or get injured. (56.1 at ¶¶ 48-50).   While the street was blocked, plaintiff stood in the street, on Mill Lane, at the intersection of South William Street (56.1 at ¶ 53-60).  Photographs taken by Bigwood (who left because he did not want to get arrested) from down the block clearly depict plaintiff standing in the street during the blockage (56.1 at ¶¶ 53-60).  Although plaintiff insisted that she remained

on the sidewalk, officers observed her standing in the middle of the street adding to the obstruction.  (56.1 at ¶¶ 57-60) After officers observed her standing in the street, she was arrested and charged with disorderly conduct for obstruction of the vehicular traffic.   She was handcuffed and brought to Pier 57 and Central Booking to be processed, then released with a desk appearance ticket.

Subsequently, plaintiff filed suit against the City and its officials claiming violation of her civil rights under § 1983 for alleged:  (1) false arrest; (2) excessive force; (3) First Amendment retaliation and chilling; (4) failure to intervene; and (5) a denial of a constitutional right to a fair trial.  Plaintiff also alleges claims against the City of New York  pursuant to *Monell* for alleged policies and practices of: (1) making mass arrests without individualized probable cause; (2) arresting individuals for protesting; (3) tight handcuffing; (4) unlawful conditions of confinement; and (5) falsifying documents, videotapes, evidence, and testimony.   As will be demonstrated below, based upon the undisputed facts in the record, plaintiff's claims must be dismissed because her arrest was supported by probable cause.   Further, even assuming that police lacked probable cause, police are nevertheless entitled to qualified immunity because they had arguable probable cause.   Plaintiff's  failure to intervene, First Amendment Retaliation, and *Monell* claims similarly must be dismissed because, *inter alia*, there was no underlying constitutional violation, and further, there is no evidence in the record to support these claims.  Plaintiff's First Amendment claims must be dismissed also because the No-Summons policy was upheld as constitutional, and therefore, her arrest was not retaliatory,  nor did it result in chilling, since plaintiff spoke publicly of her arrest on several occasions.   Plaintiff's claim of denial of a right to fair trial must also be dismissed because she received a DAT, and because there is no evidence in the record of any fabrication of any non-testimonial evidence.   Plaintiffs claim of

unconstitutional conditions must be dismissed because she did not suffer "substantial injury" caused by the conditions of her detention; there is no evidence in the record of toxic conditions or other unlawful conditions, and further, defendants did not act with a subjective culpable mental state.   Accordingly, summary judgment should be granted in its entirety.

## STATEMENT OF FACTS

For a more complete statement of facts, the Court is respectfully referred to defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, dated May 30, 2014, submitted concurrently herewith.

## STANDARD OF LAW

Defendants seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  To defeat the motion, the opposing party must present more than the "mere existence of a scintilla of evidence" to supporting her case. *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 473 (S.D.N.Y. 2003), *aff'd*, 426 F.3d 549 (2d Cir. 2005).  Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (U.S. 2007).

3

## ARGUMENT

## POINT I

## DEFENDANTS MUST BE DISMISSED ON VARIOUS GROUNDS

All but two defendants in this action must be dismissed on various grounds. [1]  Defendant Hudson River Park Trust must be dismissed because plaintiff does not have any state law claims. Defendants James Essig, Paul DeEntremont, Brian Jackson, and Stephanie Mount must be dismissed because they were never served with process, and thus, the court lacks personal jurisdiction over them.  In addition, those defendants must be dismissed because they were not personally involved in plaintiff's arrest or detention.  For the same reasons, defendants Andrade, Haut, Rodriguez, Carrieri, Rooney, Wolf, Curnyn, Smarsch, Bloomberg, Kelly, Esposito, Estavillo, Smolka, Colgan, Graham, Monahan, Shea, Galati, O'Neill, Hammerman, Cohen, Doepfner, Albano, Sweet, Marin-Jordan, Sheridan, and Downing must be dismissed because there is no evidence in the record that they had any personal involvement in plaintiff's arrest or detention.  It is well established that personal involvement of a defendant is a prerequisite to liability under Section 1983.  *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978)); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement of defendant in the constitutional violation is prerequisite to award of damages); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (A successful plaintiff must demonstrate "a tangible connection between the acts of a defendant and the injuries suffered.").

---

[1]  This case originally named 7 plaintiffs.  Plaintiffs were arrested at various locations during the RNC, and thus, the complaint names defendants who had no involvement in plaintiff's arrest or detention.  Because the lawsuits of six of the plaintiffs have been resolved, this motion addresses only the claims between plaintiff Brar and the defendants who had personal involvement in her arrest or detention.  Those claims were narrowed pursuant to agreement between the parties, which was subsequently memorialized by letter to the Court dated May 22, 2004.  This motion addresses only those claims.

4

Here, because there is no evidence of personal involvement by these defendants, they must be dismissed from the action.[2]

Accordingly, the only remaining defendants are Lieutenant Iecampo and Officer Diaz (now Sergeant Diaz).   All claims except for the excessive force claim against Lieutenant Iecampo must be dismissed for lack of personal involvement.[3]   PO Diaz similarly should be dismissed for lack of personal involvement, and also because there was probable cause for plaintiff's arrest, or at minimum, there was arguable probable cause, thereby entitling PO Diaz to qualified immunity.

## POINT II

### PLAINTIFF'S FALSE ARREST CLAIM MUST BE DISMISSED BECAUSE HER ARREST WAS SUPPORTED BY PROBABLE CAUSE

Plaintiff's claim of false arrest must be dismissed because police had probable cause to arrest her for (a) engaging in disorderly conduct by her obstruction of vehicular traffic; and/or (b) for Obstruction of Governmental Administration by interfering with the ability of police to clear the streets.  "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'"  *Maron v. County of Albany*, 166 Fed. Appx. 540 (2d Cir. 2006) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *Alfaro v. City of New York*, No. 03 Civ. 8206 (LTS) (KNF), 2007 U.S. Dist. Lexis 6408 *1, *13 (S.D.N.Y. Jan. 29, 2007) ("When there is probable cause for an arrest, a false arrest claim fails").  The existence of probable cause will depend upon "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004).

---

[2] To the extent that this Court finds that any of these defendants were personally involved, they should nevertheless be dismissed from the action for the reasons discussed herein.

[3]  Lieutenant Iecampo denies plaintiff's claim of excessive force, and thus, there are disputed issues of material fact which cannot be resolved on summary judgment and must go to the jury.

"The standard for establishing probable cause for an arrest is not a particularly stringent one." *Donovan v. Briggs,* 250 F. Supp. 2d 242 (W.D.N.Y. 2003).  Probable cause requires "the mere probability of criminal activity based on the totality of the circumstances to satisfy the Fourth Amendment" (*Taylor v. City of Syracuse,*  2009 U.S. Dist. LEXIS 29571, *15 (N.D.N.Y. April 7, 2009)) rather than "a finding of guilt or innocence."  *Winfield v. United States,* 430 F. Supp. 912, 914 (S.D.N.Y. 1977); *McDermott v. Justices of the Supreme Court*, 2001 U.S. Dist. LEXIS 10206  *1, * 6.  (S.D.N.Y 2001).

## Probable Cause for Disorderly Conduct and OGA

### Disorderly Conduct, P.L.  240.20(5)

Police here had probable cause to arrest plaintiff Brar for committing disorderly conduct, in violation of Penal Law §240.20(5), which provides, in pertinent part, that: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: … [h]e obstructs vehicular or pedestrian traffic".   It is undisputed that plaintiff and the unlawful demonstrators arrived together at the intersection of South William Street and Mill Lane.  (56.1 at ¶ 23-25).  Police observed individuals arrive together and watched as the group grew increasingly large.  (56.1 at ¶¶24-32)  Police believed that everyone present on the block was part of the group.  (56.1 at ¶¶ 30-32, 51, 52).  Police observe people run into the streets of South William Street and Mill Lane to string yarn, and dance or chant in an effort to block cars from passing.  (56.1 at ¶¶ 33-45).  Vehicular traffic came to a halt on South William Street – backed up 12 cars back, and cars were prevented from entering onto Mill Lane.  It is undisputed that, as police were attempting to clear the block,

6

plaintiff stepped into the middle of street and added to blockage. (56.1 at ¶¶53-60).[4] Plaintiff remained in the street as she watched police attempting to clear it.  Id.  Based upon these facts, it was reasonable for Officer Diaz to conclude that plaintiff was adding to the obstruction of the vehicular traffic.

## Obstruction of Governmental Administration, P.L. § 195.05[5]

For the same reasons, it was reasonable for police to believe that plaintiff was interfering with their ability to clear the street, in violation of P.L. § 195.05, which prohibits, in relevant part, individuals from "intentionally obstructing, impairing or perverting the administration of law or other governmental function, or preventing or attempting to prevent an officer from performing an official function by means of intimidation or any independently unlawful act." Because it cannot be disputed that plaintiff was standing in the middle of the street as police were attempting to clear it, it was reasonable for them to believe that they had probable cause to arrest plaintiff for interfering with their ability and their official function to clear the street.[6] Moreover, the act of standing in the street that the police are attempting to clear requires a diversion of police resources who are attempting to clear the block of the unlawful protest group and the yarn.  *People v. Tarver*, 188 A.D.2d 938 (N.Y. App. Div. 3d Dep't 1992) (upholding

---

[4]   Plaintiff's testimony that she remained on the sidewalk is "blatantly contradicted by the record so that no reasonable jury could believe" that she did not enter the street during the protest, and thus, the Court should not adopt her version of facts.  *Scott*, 550 U.S. at 380.

[5]   Although plaintiff was not charged with violating P.L. § 195.05, the relevant inquiry is whether probable cause existed for her arrest, regardless of the charge invoked by the arresting officer at the time of the arrest.  *See, e.g., Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (stating that arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (articulating relevant inquiry as "whether probable cause existed to arrest" and stating that "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest").

[6]   In pertinent part, the New York City Charter § 435(a) provides that police have the power and duty to preserve the public peace, to detect and arrest offenders, disperse assemblages which obstruct the free passage of public streets, sidewalks, and places; regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public; remove all nuisances in the public streets.

conviction for OGA where criminal defendant's threatening approach of an officer necessitated another officer to divert the attention of another officer, who needed to intervene and protect his partner).  Accordingly, there was probable cause for plaintiff's arrest.

Plaintiff may argue that, because she was filming an arrest, she was engaged in activity protected by the First Amendment, and therefore, immune from arrest.  This argument fails because a person may not cloak unlawful activity in the protective garb of the First Amendment. *Cox v. Louisiana*, 379 U.S. 536, 554-55, (1965) ("One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly.").  Thus, when "conduct, even taking the form of protest, interferes with vehicular or pedestrian traffic, arrests for disorderly conduct are appropriate and constitutional."  *People v. Bezjak* , 11 Misc.3d 424, 812 N.Y.S.2d 829, 840 (Crim. Ct N.Y. Cty. 2006) ("It is well-settled that municipalities have the authority to impose regulations in order to assure the safety and convenience of the people in the use of public highways and such regulation is not inconsistent with civil liberties"); *People v. Arbeiter*, 169 Misc.2d 771, 650 N.Y.S.2d 915 (App. Term 1st Dep't 1996); *People v. James*, 7 Misc.3d 363, 793 N.Y.S.2d 871 (Crim. Ct. NY Cty. 2005).

Further, as more fully discussed below, even assuming that police lacked probable cause, defendants are entitled to qualified immunity because police had arguable probable cause to arrest plaintiff.

## POINT III

## DEFENDANTS ARE ENTITLED TO
## SUMMARY JUDGMENT AS TO
## PLAINTIFF'S CLAIM OF
## FIRST AMENDMENT VIOLATION

Plaintiff alleges that her arrest was motivated by the City's desire to retaliate against her for the exercise of her First Amendment rights and to chill the exercise of those rights. (DE # Complaint, Sixth Claim for Relief). To state a *prima facie* case of a First Amendment retaliation claim, plaintiff must proffer admissible evidence that: (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by the exercise of that right; and (3) there was a resultant and "actual chill[ing]" of his exercise of that constitutional right. *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). First, as shown above, there was probable cause for her arrest, and as such, she has no First Amendment protection. *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (U.S. 2012); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. N.Y. 2001) ("As to the second element, because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken."). Finally, there is no evidence on the record to show retaliatory motives by defendants. Accordingly, plaintiff's claim should be dismissed.

Even assuming a lack of probable cause, her claim fails because she cannot establish the second and third elements.[7] To establish the third prong of chilling, plaintiff must prove that defendants' actions effectively chilled the exercise of her First Amendment rights. *Allen v. City of New York*, 03 Civ. 2829 (KMW)(GWG), 2007 U.S. Dist. LEXIS 15, at *66 (S.D.N.Y. Jan. 3,

---

[7]  Plaintiff claims that that denial of a summonses or DAT was in retaliation for her exercise of First Amendment rights. This claim must be dismissed because (a) she was, in fact, issued a DAT (56.1 at ¶ 98); and (b) this Court has already upheld the constitutionality of the City's No-Summons Policy in these Consolidated RNC Cases, by Opinion and Order dated September 30, 2012. *See Dinler v. City of New York*, No. 04-civ. 7922,*26 (S.D.N.Y. Sept. 30, 2012) (RJS)(JCF).

2007) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).    Where, as here, a plaintiff continues to engage in First Amendment activity following her arrest, she fails to establish chilling of her First Amendment right to free speech.  *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 693 (S.D.N.Y. 2004)(quoting *Curley,* 268 F.3d at 73); *Persaud v. McSorley*, 275 F. Supp. 2d 490, 495 (S.D.N.Y. 2003)(Conner, J.)(citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper criticizing the local government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write editorials in the same critical manner as before the lawsuit)).  Here, plaintiff's claim fails as a matter of law, since she made public statements about her arrest on several occasions following arrest, including in a 21-page article that she published online on a public website, as well as in several magazines and public speeches.  (56.1 at ¶¶102, 103).


## POINT IV

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CONDITIONS OF CONFINEMENT CLAIM

Plaintiff alleges that she was subjected to unconstitutional conditions of confinement in the form of "exposure to toxic substances, unreasonable overcrowding, extremes of heat and/or cold, denial of access to necessary medication and medical attention, denial of adequate food and

water, denial of bathroom facilities, and/or denial of access to counsel[8]."  (Compl. at ¶ 106).

Under the Fourteenth Amendment Due Process clause, "not every disability imposed during

pretrial detention amounts to 'punishment' in the constitutional sense." *Lewis v. Washington*,

1996 U.S. Dist. LEXIS 18173, 9-10 (S.D.N.Y. Dec. 4, 1996) (quoting *Bell v. Wolfish*, 441 U.S.

520, 537 (1979)).  To prevail on a conditions claim, "it is clear that plaintiff must show that [she]

sustained a significant injury as a result of defendant's conduct in order to prevail under the

Fourteenth Amendment's Due Process Clause." *Lewis*, 1996 U.S. Dist. LEXIS 18173 at *9-10

(string of cases cited).  Even assuming substantial injury – of which there was none – plaintiff's

claim must still be dismissed because she cannot show that she was subjected to unconstitutional

conditions, or further, that defendants acted with a subjective, culpable state of mind in allegedly

putting plaintiff's health or safety at risk.  *See Caiozzo v. Koreman*, 581 F. 3d 63, 71 (2d Cir.

2009) (holding that plaintiff pre-trial detainee must meet the "subjective" test laid out in *Farmer*

standard to prevail on a conditions claim);  *Farmer v. Brennan*, 511 U.S. 825 (1994) (rejecting

adoption of an "objective test" and instead holding that plaintiff must prove that the prison

official "knows of and disregards an excessive risk to inmate health or safety; [that he] must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.").  Thus, mere negligence can never establish a

violation of the due process clause.  *Bryant v. Maffuci*, 923 F.2d 979, 984 (2d Cir. 1991) ("mere

negligence is insufficient to state a viable claim").

---

[8]  Plaintiff's claim of that she was denied access to counsel as part of her conditions of confinement claim under the Fourteenth Amendment is not proper and is required to be pled as a separate cause of action under the Sixth Amendment.  In addition, the Supreme Court "ha[s] never held that the right to counsel attaches at the time of arrest." *United States v. Gouveia*, 467 U.S. 180, 190 (1984). "[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. United States*, 512 U.S. 452, 457 (1994). Here, it is undisputed that plaintiff had access to counsel prior to her arraignment.  Plaintiff had access to phones on at least two occasions, having called her friends and her parents.  In addition, her friends contacted counsel, i.e. the NLG on her behalf.  As such her claim of denial of access to counsel should be dismissed.

11

**Plaintiff Did Not Sustain Any Injury, Let Alone "Substantial Injury"**
**Caused by the Conditions of Her Confinement**

Here, plaintiff did not suffer significant injury resulting from the conditions of her detention.  Accordingly, her conditions claim must be dismissed.

**Plaintiff Had Adequate Amenities and Was Not Exposed to Toxic Substances**

It is undisputed that plaintiff had access to adequate food or water throughout her brief detention (56.1 at ¶¶ 77, 89, 90); she was not subjected to unreasonable overcrowding (56.1 at ¶¶ 76, 77) (admitting that Pier 57 was empty); she had access to bathroom facilities, benches, and even a television (56.1 at ¶¶ 77, 79, 88); she was not subjected to extreme temperatures;[9] she was not denied medicine or medical attention (56.1 at ¶¶ 78, 85-87, 95) (having been seen by at least two medical professionals, and admits that she was asked if she wanted to go to the hospital, but declined; Plaintiff was asked if she wanted to the hospital; Plaintiff was seen by medical staff); and she was not exposed to any toxic substances.  (56.1 at ¶¶). She had access to phones (56.1 at ¶¶ 91-94).  In addition, there is no evidence to show that she was exposed to any toxic chemicals (56.1 at ¶¶ 219-318).  The detention facilities were by her own admission, "top facilities".  (56.1

---

[9]  To the extent that plaintiff is claiming extreme temperatures, this claim must be dismissed because the failure to provide pretrial detainees with even basic comforts for relatively short periods of time is not actionable, including claims regarding exposure to extreme temperatures.  *See Grant v. Riley*, 89 Civ. 0359 (MBM), 1993 U.S. Dist. LEXIS 16605, at **10-13 (S.D.N.Y. Nov. 23, 1993) (no constitutional violation where prisoner allegedly had no heat in his cell for at least three days and asserted that at the time, he had "no coat, bedding or blankets for over nine hours, and that cold wind blew through the broken windows, which were incompletely covered with loose plastic."); *Scott v. Lopez et al.*, 11 CV 809 (WHP), 2012 U.S. Dist. LEXIS 3241, **3-5 (S.D.N.Y. Jan. 5, 2012) (dismissing complaint and holding that allegation that plaintiff was confined to a chilly room for several hours did not constitute a constitutional violation); *Gardner v. Mental Health Unit of Sullivan Corr. Facility*, No. 07 Civ. 5535 (WHP), 2009 U.S. Dist. LEXIS 53266, at *3 (no constitutional violation where prisoner was "very cold" for no more than seven days); *Johnson v. City of New York, et al.*, 2011 U.S. Dist. LEXIS 47679 at *14 (S.D.N.Y. April 29, 2011) (no constitutional violation where plaintiff alleges that there were no fans or air conditioning in the facility which made the temperature "like 140 degrees"); *Felmine v. City of New York, et al.*, 2011 U.S. Dist. LEXIS 111553 at *22 (S.D.N.Y. Sep. 29, 2011) (no constitutional violation where pre-trial detainee was kept in cold cell overnight for 6-7 hours); *Hodge v. Sidorowicz*, et al., 2011 U.S. Dist. LEXIS 147174 at **57-58 (S.D.N.Y. Dec. 20, 2011)(no constitutional violation where plaintiff alleges that he was kept in cell that was so cold he had to sleep in his clothes).

at ¶¶81, 89).  These undisputed facts demonstrate that plaintiff's health was not disregarded, and moreover, her medical needs were adequately addressed.

## Defendants Did Not Act With A Subjectively, Culpable State of Mind

Even assuming *arguendo* that plaintiff could show – which she cannot -- that she was (a) at risk of injury caused by the conditions of her confinement; and (b) did, in fact, suffer not just an injury, but a substantial one, there is no evidence to show that defendants acted with a subjectively culpable state of mind.  On the contrary, the record demonstrates that defendants took measures to ensure that the conditions were adequate in all respects (56.1 at ¶¶ 129-396).  Defendants provided adequate food and water (56.1 at ¶¶ 319-340, 382-386);  temperature (56.1 at ¶¶ 212-218); medical attention (56.1 at ¶¶ 352-368, 387-369); safety (56.1 at ¶¶ 129-170, 219-31); comfort and cleanliness (56.1 at ¶¶ 195-211, 397-405); bathrooms (56.1  ¶¶ 341-351) and access to phones (56.1 at ¶¶ 371-381).  By way of example, prior to becoming operational for the RNC, Pier 57 was cleaned with a mechanical sweeper, hosed down and mopped with disinfectant.  (56.1 at ¶¶ 194-198).  Throughout the RNC, cells were regularly cleaned, trash was disposed of, cleaned on a continuous basis, and  inspected for cleanliness during the entire week of the RNC.  (56.1 at ¶¶ 199, 200, 205-208).   In addition, in response to concerns raised by arrestees, durable carpet was installed in the cells during the RNC.  (56.1 at ¶ 210).  Moreover, on August 30, 2004, in response to concerns raised during the RNC, the NYPD hired an independent contractor to perform an indoor air quality of assessment of Pier 57 on that same day.  (56.1 at ¶¶ 222-223).  Upon a thorough analysis, the area where arrestees were detained was determined to be in compliance with OSHA standards.  (56.1 at ¶¶ 224 – 253).   On September 1, 2004, another air quality test was performed at Pier 57 and the air quality was determined to be within established well within guidelines. (56.1 at ¶¶ 254-311).  These are just

a small handful of examples to show that the City did not act with a subjective culpable mental state in detaining arrestees.  Accordingly, plaintiff's conditions must be dismissed.

## POINT V

### DEFENDANTS ARE ENTITLED TO
### SUMMARY JUDGMENT AS TO
### PLAINTIFF'S CLAIM OF FAILURE TO
### INTERVENE

As an initial matter, plaintiff's failure to intervene claim must be dismissed, as there can be no failure to intervene where there was no constitutional violation.  As discussed in **Points I-IV** *supra*, plaintiff has not proven any constitutional violation was committed against her and thus, her failure to intervene claim should be dismissed.  *Feinberg v. City of New York*, No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends.") (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *accord Foy v. City of New York*, No. 03 Civ. 7318, 2004 U.S. Dist. LEXIS 18274, 2004 WL 2033074, at *3 (S.D.N.Y. Sep. 10, 2004).

Even assuming *arguendo* that plaintiff could prove an underlying constitutional violation (which she cannot), plaintiff's failure to intervene claim fails nonetheless.   To sustain a failure to intervene claim, plaintiff must prove that the defendant:  (1) had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene.  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).   Here, Officer Diaz was the arresting officer and there are no other named defendants who were present during plaintiff's arrest who

could have prevented the arrest.  The only named defendant present on scene was Sergeant Mount, but as shown above, all claims against her must be dismissed for lack of jurisdiction. Similarly, plaintiff does not identify any defendant who could have intervened on any of her claims of alleged constitutional violations.  Accordingly, this claim must be dismissed.

**POINT VI**

**DEFENDANTS ARE ENTITLED TO
SUMMARY JUDGMENT AS TO
PLAINTIFF'S CLAIM OF DENIAL OF
A CONSTITUTIONAL RIGHT TO A
FAIR TRIAL**

In order to establish a claim that plaintiff's constitutional right to a fair trial was violated, plaintiff must prove that the defendant gave fabricated evidence to prosecutors that was likely to influence the jury in her criminal court trial, and that plaintiff suffered a deprivation of liberty as a result.  *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012).   Here, even assuming *arguendo* that statements made to the prosecutor were incorrect, plaintiff's claim fails nonetheless because alleged false testimony alone cannot form the basis for a fabrication of evidence claim, and because plaintiff did not suffer a constitutionally cognizable deprivation of liberty.

First, the "evidence" at issue must be admissible at a criminal trial in order to state a claim.  *Jones v. City of New York,* 12-CV-3658 (JG), 2013 U.S. Dist. LEXIS 162235, at *29 (E.D.N.Y. Nov. 14, 2013) (a false statement by an officer to an ADA is not actionable because, as inadmissible hearsay, it would never get before a jury in a criminal case).  Notably, a criminal court complaint is not admissible evidence in a criminal action.  *In re Clifton H.,* 213 A.D.2d 546, 547 (N.Y. App. Div. 2d Dep't 1995).  It is not the complaint itself that would be likely to influence the jury's decision.  Rather, it is the testimony of the complainant that would influence the jury, and the complainant – defendant Diaz - is absolutely immune from liability for any

15

allegedly false testimony.  As a matter of law, police officers, like other witnesses, are immune from liability for giving false testimony.  *McCaffrey v. City of New York,* No. 11 Civ. 1636 (RJS), 2013 U.S. Dist. LEXIS 18815, at *12 (S.D.N.Y. Feb. 7, 2013) (citing *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505-07 (2012)); *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).  In other words, if the only avenue by which evidence is admissible at trial and can reach the jury is through the defendant's testimony, the defendant is immune from suit on a fabrication claim.  *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012); *Carr v. City of New York,* 11 Civ. 6982 (SAS), 2013 U.S. Dist. LEXIS 57545, at *22-24 (S.D.N.Y. Apr. 19, 2013).

In addition, where, as here, a plaintiff receives a Desk Appearance Ticker ("DAT"), plaintiff likely cannot prove any deprivation of liberty sufficient to state a violation of fair trial claim.  *Antes v. Bonura*, 10 Civ. 5472 (GAY) 2013 U.S. Dist. LEXIS 36255, at *15 (S.D.N.Y. Feb. 25, 2013) ("there is no record evidence from which a reasonable jury could infer that plaintiff suffered a deprivation of liberty because of the alleged fabrication. She received an appearance ticket and was released without having to post bail. Although she had to appear in court "a couple" of times to resolve the case, the court placed no restrictions on plaintiff's liberty during the pendency of her case.").  At the very least, it is not clearly established that the issuance of a DAT could be a deprivation of liberty sufficient to give rise to a fair trial claim, entitling defendants to qualified immunity on this claim.  *See Bock v. Gold*, 408 Fed. Appx. 461, 463 (2d Cir. 2011) (qualified immunity granted where contours of the liberty interest were not clearly established at the time of incident).

## POINT VII

## DEFENDANTS ARE ENTITLED TO
## QUALIFIED IMMUNITY[10]

Even should the Court find that police lacked probable cause, defendants are entitled to qualified immunity on all claims.  Qualified immunity operates to shield officers who perform discretionary functions from liability for civil damages insofar as it was objectively reasonable for such officials to believe, *even if mistakenly*, that their conduct did not violate a plaintiff's constitutional rights.  *See Allen v. City of New York*, No. 03 Civ. 2829, 2007 U.S. Dist. LEXIS 15 (S.D.N.Y. Jan. 3, 2007) ("The doctrine of qualified immunity 'extends to official conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, insofar as it was objectively reasonable for such officials to believe, even if mistakenly, that their conduct did not violate such rights'") (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 127-128 (2d Cir. 1997)); *Hunter v. Bryant*, 502 U.S. 224,228-29 (1991) (The qualified immunity doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law.") (quoting *Malley v. Briggs*,475 U,S. 335,341(1986)).

A defendant is entitled to qualified immunity if either (1) his actions did not violate clearly-established law; or (2) it was objectively reasonable for him to believe that his actions did not violate clearly-established law (see *Iqbal v. Hasty*, 490 F.3d 143, 152 (2d Cir. 2007)); or (3) "officers of reasonable competence could disagree on whether the probable cause test was met." Crenshaw, No. 08 Civ. 5388, 2010 U.S. App. LEXIS 8189, at *5-6 (citing Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)) (internal quotation marks omitted).

---

[10]  To the extent that the Court does not dismiss the defendants in Point I on grounds of lack of personal involvement, they are entitled to qualified immunity for reasons discussed herein.

Here, Officer Diaz arrested plaintiff at the instructions of a superior officer. (56.1 at ¶ 59-61). As such, it was objectively reasonable for Officer Diaz to believe that there was probable cause to arrest plaintiff. *Beal v. City of New York*, 1994 U.S. Dist. LEXIS 5269, 15-17 (S.D.N.Y. Apr. 15, 1994) (granting qualified immunity to officer, finding that "[a]bsent any evidence tending to show that it was objectively unreasonable for Beatty to disbelieve his superior officer or to question his good faith, Beatty was entitled to rely upon the officer in deciding whether there was probable cause to process plaintiff's arrest."). *See Rivera v. Granucci*, 1993 U.S. Dist. LEXIS 3264, *13 (D. Conn. Mar. 12, 1993) (officer who made arrest on representations of other officers was entitled to qualified immunity where there was no evidence that arresting officer had reason to disbelieve fellow officers, or to believe that they were acting in bad faith); *Vela v. White*, 703 F.2d 147, 152 (5th Cir. 1983) (police officer who arrested plaintiff for intoxication and disorderly conduct, at direction of superior, but who was not present during alleged conduct, was entitled to qualified immunity).

In addition, even if Officer Diaz is deemed the decision maker of the arrest (which she was not), she is entitled to qualified immunity because, even assuming that she was mistaken in her belief that there was probable cause to arrest plaintiff for blocking vehicular traffic or interfering with their ability to clear the streets, she should nevertheless be entitled to qualified immunity because it was objectively reasonable for her to believe that probable cause existed, or at minimum, officers of reasonable competence could disagree about whether plaintiff was adding to the obstruction or interfering with functions of police to clear the streets.

Defendants are entitled to qualified immunity on all other claims. On plaintiff's claim of First Amendment violation, even assuming *arguendo* that probable cause does not vitiate plaintiff's First Amendment claim (or that the other arguments made above are rejected),

18

defendants should still be entitled to qualified immunity because, at the time of plaintiff's arrest, the law was not clearly established that a plaintiff had a "right to be from a retaliatory arrest that was otherwise supported by probable cause."  *Reichle,* 132 S.Ct. at 2093.

Defendants are also entitled to qualified immunity on plaintiff's claims of failure to intervene and unlawful conditions of confinement because it was objectively reasonable for defendants to believe that their conduct did not violate the law.

## POINT VIII

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S *MONELL* CLAIMS

Plaintiff alleges that defendant City of New York had "customs, policies, usages, practices, procedures and rules" that included (1) making mass arrests without individualized probable cause; (2) arresting individuals for peacefully participating in a political protest or for being in the vicinity of political protest; (3) using unnecessary force in taking individuals into custody; (4) deliberately handcuffing detainees too tightly; (5) exposing plaintiff to toxic substances and other unlawful conditions of confinement; (6) and falsifying documents videotapes, evidence, and testimony.

**No Underlying Constitutional Violation**:   In order for plaintiff to succeed on her *Monell* claims, however, plaintiff must first show that an underlying constitutional violation occurred against her before ever reaching the question of whether or not the City of New York is liable.  *See Askins v. Doe,* 2013 U.S. App. LEXIS 17644, *10-*11 (2d Cir. 2013) ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable.").   "In the absence of constitutional injury, there can be no claim of . . . municipal

19

liability." *Newton v. City of New York*, 07-cv-6211 (SDNY July 31, 2009)(SAS). "A prerequisite to a <u>Monell</u> claim, of course, is a violation of plaintiff's constitutional rights." *Sforza v. City of New York,* 07-cv-6122 at 28 (SDNY March 31, 2009) (DLC). As shown herein, defendants had probable cause to arrest plaintiffs for violating the disorderly conduct statute, and/or for other violations under *Jaegly/Devenpeck*. *See Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) (holding that, where the officers' action did not violate plaintiffs' constitutional rights, the City cannot be liable under § 1983, "regardless of whether the officers acted pursuant to a municipal policy or custom"); *City of Lost Angeles v. Heller*, 475 U.S. 796 (1986). Here, because plaintiff has failed to prove any underlying constitutional violation occurred (*see* Points I – VII *supra*) plaintiff's *Monell* claims must be dismissed.

However, even assuming *arguendo* that plaintiff could prove an underlying constitutional violation (which she cannot), plaintiff's *Monell* claims still fail because a single isolated incident alleged in a complaint, especially where the alleged incident involves only officials below the policymaking level, will not suffice to establish a municipal policy or custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985); *Ricciuti*, 941 F.2d at 123. *See also Pembaur*, 475 U.S. at 479 ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (emphasis in original). Thus, to hold a municipality liable, plaintiff must provide proof of the existence of an unconstitutional policy, and further, that the alleged policy was the "moving force" between the policy and alleged constitutional deprivation, *i.e.*, that that there is a "direct causal casual link". *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690-91 (1978); *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (plaintiff must

demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").   To prove the existence of a policy or custom, plaintiff must establish: (1) a formal policy, officially promulgated or adopted by the City of New York, *Monell*, 436 U.S. at 690; (2) that officials responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision that caused the alleged violation of plaintiff's constitutional rights, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to constitute a "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-130 (1988) (plurality opinion); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992); or (4) liability is based on a claim of failure to train or supervise, that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."   *City of Canton*, 489 U.S. at 388; *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992), *cert. denied*, 507 U.S. 961 (1993); *Bennerson v. City of New York, et al*., 02 Civ. 10182 (RWS), 2004 U.S. Dist. LEXIS 7241, at *10-12 (S.D.N.Y. Apr. 28, 2004).

As demonstrated below, plaintiff's *Monell* claims must be dismissed because, in addition to failing to establish an underlying constitutional violation, she cannot establish the existence of an unconstitutional policy that was the driving force behind the alleged constitutional violation.

## No formal policy of the City of New York of Any Alleged Constitutional Violations

The City did not have any written polices (1) making mass arrests without individualized probable cause; (2) arresting individuals for peacefully participating in a political protest or for

21

being in the vicinity of political protest; (3) using unnecessary force in taking individuals into custody; (4) deliberately handcuffing detainees too tightly; (5) exposing plaintiff to toxic substances and other unlawful conditions of confinement; (6) and falsifying documents videotapes, evidence, and testimony.  Additionally, as shown below, there is no evidence to establish that it had policies of any of the above.  Accordingly, plaintiff's *Monell* claims must be dismissed.

## No Policy of Making Mass Arrest Without Individualized Probable Cause

There is no evidence to show that the City had a policy of making mass arrests without individualized probable cause.  On the contrary, the evidence shows that that City took measures to facilitate First Amendment activity by, for example, setting up a large demonstration area around Madison Square Garden, the site of the RNC (56.1 at ¶ 110-121) and escorting unpermitted marches to proceed around the City (56.1 at ¶¶ 103, 116).  Moreover, of the approximate 800,000 individuals protested in New York City during the RNC, 1,800 people, or .2% of the total number of protesters were arrested.  (56.1 at ¶¶ 104, 105).  In addition, the NYPD arranged for members of its Legal Bureau to be present at Pier 57 on a daily basis throughout the RNC in order to review the circumstances of an arrest with officers and assist in determining whether probable cause existed.  (56.1 at ¶¶ 403-408).  If an arrest was not supported by probable cause, Legal Bureau staff would assist in voiding that arrest.  (56.1 at ¶ 408).  Accordingly, plaintiff's *Monell* claim on grounds of an alleged policy of mass arrests without individualized probable cause must be dismissed.

## No Policy of Arresting Individuals For Being Involved in, or Near Political Protest

Similarly, there is no evidence to show that the City had a policy of arresting individuals for being involved in, or in the vicinity of political protests.  Further, as shown above, police

took measures to facilitate First Amendment activity and to ensure that arrests were supported by probable cause.   Accordingly, plaintiff's *Monell* claim on grounds of an alleged policy of arresting individuals for participating in or being in the vicinity of political protests must be dismissed.

## No Policy Of Using Unnecessary Force In Taking Individuals Into Custody

Plaintiff cannot establish that the City had a policy of using unnecessary force in taking individuals into custody.   On the contrary, officers are trained in the proper use of force, and the NYPD's Patrol Guide specifically prohibits the use of excessive force. (56.1 at ¶¶ 400-402). Moreover, where, as here, the police have probable cause to make an arrest, they are entitled to use force to handcuff the suspect.   *See, e.g., Esmont v. City of New York*, 371 F. Supp.2d 202, 214-15 (E.D.N.Y. 2005) (handcuffing was reasonable, even though arrestee posed no threat and did not attempt to flee); *Soares v. Connecticut*, 8 F.3d 917, 922 (2d Cir. 1993) (there is no authority for the proposition  that a person has the right to not be handcuffed in the course of arrest, even absent resistance or attempt to flee); *Barratt v. Joie*, 96 Civ. 0324 (LTS) (THK), 2002 U.S. Dist. LEXIS 3453, at *24 (S.D.N.Y. March 4, 2002) (force that is normally incident to handcuffing is reasonable); *Perlleshi v. County of West Chester, et al.*, 98 Civ. 6927 (CM), 2000 U.S. Dist. LEXIS 6054, at *18 (S.D.N.Y. April 24, 2000)("[c]uffing an arrestee and raising his arms to do it in a way that may cause momentary pain . . . is not excessive force as a matter of law."); *Scott v. County of Nassau*, 94 CV 4291, 1998 U.S. Dist. LEXIS 19680, at *14 (E.D.N.Y. Dec. 11, 1998) (granting summary judgment on an excessive force claim and holding that is was reasonable to handcuff plaintiff's hands behind his back when placing him under arrest).

23

**No Policy Of Deliberately Handcuffing Detainees Too Tightly**

There is no evidence of a policy of deliberately handcuffing detainees too tightly. Officers were trained in the use of flex cuffs and were told not to tighten them any tighter than normal handcuffs.  (56.1 at ¶¶ 390-391).  Accordingly, the claim must be dismissed.

**No Policy Of Exposing Plaintiff To Toxic Substances Or Unlawful Conditions**

There is no evidence to show that the City had a policy of exposing plaintiff to toxic substances or unlawful conditions.  As shown above, the City detained plaintiff in an environment where she had access to basis amenities and was not exposed to harmful substances. Accordingly, the claim must be dismissed.

**No Policy Of Falsifying Documents Videotapes, Evidence, And Testimony**

As shown above, there is no evidence to show that the City had a policy of falsifying evidence.  Further, as shown above, the NYPD took measures to ensure that arrests were lawful, and further, this Court has already held that there is "no evidence" to establish probable cause to believe that a fraud or crime was committed by Legal Bureau attorneys or that there was widespread fraud between Legal Bureau representatives and arresting officers.  (56.1 at ¶¶ 409-411).  Further, even assuming alleged falsification of evidence in this case, as earlier stated, one isolated incident, especially by an official below the policymaking level, will not suffice to establish a municipal policy or custom.  *Tuttle*, 471 U.S. at 824; *Ricciuti*, 941 F.2d at 123. Accordingly, the claim must be dismissed.

Plaintiff's Monell claims must be dismissed also because there is no evidence to show that the City was deliberately indifferent by failing to train its officers.  As shown above, officers were trained in the use of force and handcuffing.

**CONCLUSION**

By reason of the foregoing, defendants respectfully request that this Court grant

their motion to dismiss plaintiff's claims in its entirety, and award costs, fees and other and

further relief as the Court deems just and proper.


Dated:   New York, New York
         May 30, 2014

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York,  N.Y. 10007
Tel:  (212) 356-2406
